## Case No. 14,792.

### UNITED STATES v. CHENOWETH et al.

[6 McLean, 139; [2] 4 West. Law Month. 165.]

Circuit Court, D. Ohio. Oct. Term. 1854.

SHIPPING PROHIBITED ARTICLES ON STEAMBOATS—GUNPOWDER—WHO LIABLE.

1. Act August 30, 1852 [10 Stat. 61], which prohibits the shipment of gunpowder and other ignitible articles on board of steamboats, punishes by fine or imprisonment, for putting up such articles for shipment. except they be put up and marked as required, or for shipping the same.

2. An individual who has not put up the articles, is not liable for shipping the same, if the articles have not been actually shipped on board of the vessel

Mr. Morton, U. S. Dist. Atty.
Mr. Taft. for defendants.

OPINION OF THE COURT. This is an indictment against the defendants for shipping gunpowder. in violation of the act of congress of the 30th August. 1852. By the 8th section of that act. gunpowder and other materials which ignite by friction. are required to be packed in a particular manner. and distinctly marked on the outside with a description of the articles; and any one who shall pack or put up for shipment any of the above articles. or shall ship the same. except as above provided. shall be deemed guilty of a misdemeanor and punished by fine or imprisonment, &c.

---

[1] [Reported by Hon. William Cranch. Chief Judge.]

[2] [Reported by Hon. John McLean, Circuit Justice.]

The defendants having pleaded not guilty, a jury was sworn, &c. A. H. Bayless, a witness, stated that three casks containing kegs, which he supposed to be gunpowder, were deposited on the wharf of Cincinnati, for shipment on the —— day of ——, 1853. The dray tickets represented the casks to contain merchandise. The head of one of the hogsheads was out. and witness saw kegs which he supposed contained gunpowder. Capt. Halderman states, that in November last he went to the wharf, and found at the landing three bacon hogsheads, marked R. R., Florence, Alabama. He had the head taken out of the third hogshead, and found they contained powder. A man by the name of Ross said he had shipped them, and on being told it was contrary to law, said he was not aware of it. and that he had been in the habit of shipping powder. The kegs which contained the powder were of the usual size, and contained each about twenty-five pounds. Each cask contained from seven to ten kegs. The defendants were engaged in the commission and forwarding business. Ross said the hogsheads had been carried to the Steamboat "Royal Arch." Robert Kennedy, says he was clerk to the St. Louis mail boat, that the hogsheads were marked as containing oil cake, he received the hogsheads the evening before from defendants. In rolling the hogsheads to put them on board the steamer, the head fell out of one of them. Capt. Pearce spoke to one of defendants. who had the head put in. Thomas Gwynne; the witness drives a powder wagon; he hauled the casks from the powder house. Saw when the head came out. the hogsheads contained kegs of gunpowder. Capt. Pearce. saw the cask with the head out. and saw that it contained kegs of gunpowder. A motion was made to overrule the evidence, but the court refused to take the evidence from the jury. It appeared that the hogsheads had been forwarded to the defendants for shipment in the ordinary course of their business; and there was no evidence to show that they had any knowledge of the contents. The hogsheads appeared to have been used for pork or bacon hams. from the marks which they bore.

THE COURT instructed the jury that there being no evidence to show that the defendants had packed the gunpowder for shipment, in violation of the act of congress, they could only be convicted. under the act. for shipping the article. It does not appear that defendants had any knowledge that the casks were brought from the powder house. from which a presumption might arise that they had knowledge of their contents. but if such a presumption could be raised. it would not go to convict the defendants of packing the powder. This being the case. the jury will enquire whether the articles were shipped. The words of the law are "if any one shall put up for shipment. on board of any such vessel, except as before directed. or shall

ship the same," he shall be deemed guilty, &c. The articles were not shipped by the defendants, although they were brought to the wharf for that purpose. Before the hogsheads were actually shipped on board the vessel, the head of one of them was taken out, and the gunpowder was discovered, which prevented the shipment of them within the meaning of the law.

It is admitted that the shipment of gunpowder or other articles specified, as prohibited by the act, should be punished; as such act endangers the lives of passengers and the property on board, as well as the boat itself. But however aggravated the act, no one should be convicted, unless it be shown he is guilty of the offense within the statute.

The jury found the defendants not guilty.