## ELLIS v. BOARD OF STATE AUDITORS.

1. STATE OFFICERS—ILLEGAL PAYMENT OF SALARY—REMEDY OF STATE—AUTHORITY OF BOARD OF AUDITORS.

Joint resolution No. 16 of the legislative session of 1895, authorizing the board of state auditors to ascertain the amount paid as salaries to certain state officers in excess of the amounts fixed by the Constitution, to inquire into the facts and circumstances thereof, and to make such a settlement with the several officers as should, in the opinion of the board, be just and equitable in each case, and requiring the board, if any sums should be found due to the State, to commence suit therefor, did not empower the board to compromise with such officers, but merely to determine whether the State had a lawful claim against them, and, if so, to bring suit thereon. McGRATH, C. J., dissenting.

2. CONSTITUTIONAL LAW—COMPROMISE OF STATE CLAIM.

  The legislature cannot authorize the compromise of a claim of
    the State for moneys paid out in violation of the Constitution,
    on grounds of abstract justice and equity.   Whether it may do
    so because of a doubt as to the legality of the claim, or the
    ability to enforce its collection,—*quære.*

3. PAYMENT—MISTAKE OF LAW.

  Payments made under the erroneous supposition that a constitu-
    tional amendment imposing such obligation had been adopted
    by the people are made under a mistake of law, and not of
    fact.

4. SAME—RECOVERY BY STATE.

  Money paid out by a ministerial officer of the State under a mis-
    take of law may be recovered back, since in making such pay-
    ments the officer acted beyond the scope of his authority.   MC-
    GRATH, C. J., dissenting.

*Mandamus* by Adolphus A. Ellis to compel the board
of state auditors to take the steps necessary to arrive at
a just and equitable settlement of the claim of the State
against relator for an excess of salary received by him,
pursuant to a joint resolution of the legislature.   Sub-
mitted November 5, 1895.   Denied December 24, 1895.

*A. A. Ellis, in pro. per.*

*Fred A. Maynard,* Attorney General, for respondent.

HOOKER, J.   At the spring election in 1891, an amend-
ment to the Constitution increasing the salary of the at-
torney general was submitted to the electors.   The ·vote
was canvassed, and the amendment was declared to be
carried.   Similar action was had relative to another
amendment submitted in 1893.   Salaries were paid at
the increased rate, until a recanvass, in obedience to the
order of this court, resulted in the determination and
declaration that the respective amendments had been
defeated.   Relator alleges that meantime, believing said
amendments to have been legally adopted, he, in good

107 MICH.—34

faith, received from the state treasurer the sum of
$5,218.08 in excess of the amount legally due him under
the former constitutional provisions; that, after ascer-
taining that fact, he attempted to adjust the same with
the State, but before any adjustment was reached, and
at the last session of the legislature, the following joint
resolution (No. 16, Pub. Acts 1895, p. 603) was adopted:

"*Whereas,* certain moneys were from time to time paid
as salaries, under and by virtue of act eighty-seven of
the public acts of one thousand eight hundred and ninety-
one, and acts one hundred twenty-seven and one hundred
twenty-eight of the public acts of one thousand eight hun-
dred ninety-three; and

"*Whereas,* certain parts of each of said acts have, in
effect, been held unconstitutional by the Supreme Court
of this State, and no decision having been made as to the
rights of the parties to whom the salaries were paid, and
no settlement having been had with the several parties
receiving the same: Therefore

"*Resolved by the Senate and House of Representatives,*
that the board of state auditors be and are hereby author-
ized to ascertain the amount paid under and by virtue
of either or any of said acts, and to inquire into the facts
and circumstances thereof, and to make such a settle-
ment with the several parties as shall, in the opinion of
the board, be just and equitable in each case, and, if any
sum or sums shall be found due to this State, said board
of state auditors are hereby authorized and required to
commence suit therefor, in the name of the people of the
State of Michigan.

"This act is ordered to take immediate effect."

The petition states, further, that the board of state
auditors caused a notice to be served upon relator to ap-
pear before them, for the purpose of adjusting the claim
of the State against him for the excess received by him,
over and above his lawful salary, and that he appeared
accordingly. This meeting was adjourned to a subse-
quent day, when said board, acting under and in accord-
ance with an opinion furnished them, at their request,
by the attorney general, determined that they were not

vested by said resolution with authority to compromise said claim, but only to ascertain the amount overpaid, and to demand payment of the same, and commence an action therefor in case payment should be refused; and said board, without inquiring into the facts and circumstances, or the rights or equities of relator, adopted a resolution instructing the clerk of said board to notify the relator that there was due to the State from him the sum of $5,218.08, and that, unless the same should be paid within 60 days from the date of service of said notice, the attorney general was thereby authorized to commence an action to recover the amount, which notice was served upon him.    Relator asserts that the board *has not* made inquiry concerning his rights and equities in the premises, and refuses to do so, acting under the opinion of the attorney general, which he claims not to be a just construction of said law; and "he claims the right, under said resolution, to present his case to the board of state auditors, and claims that it is the duty of said board to inquire into the facts and circumstances, and make a just and equitable settlement, and use their honest judgment in the premises, and that the last clause of the said resolution simply authorizes the board, after they have made such a settlement, if any sum be found due, to sue and collect the same." He prays that a writ of *mandamus* be issued to said board, "commanding and requiring them to hear the petitioner as to his rights and equities, and to make a just and equitable settlement with the petitioner, according to the terms and spirit of the said joint resolution." The answer admits the truth of the facts alleged in the petition, and the question is thereby reduced to a construction of the joint resolution.

The relator contends that he is entitled to a hearing before the board; that the board is authorized to compromise the matter upon principles of abstract justice and equity; and that, if action is to be brought, it is only

after such settlement with the relator shall have shown something due the State. To recapitulate, the relator contends:

1. That the State has no legal claim against him, for the reason that the payment was voluntary, being made and received under a mistake of law.

2. That he is entitled to a hearing before said board.

3. That the board is required to settle with him upon principles of abstract justice and equity, as contradistinguished from legal and equitable rules.

4. That no action can be brought until a settlement is reached.

We are asked to set the board in motion, unless we shall determine that the State has no valid claim.

The brief of the relator discusses the first proposition in connection with the question whether the legislature has the power to authorize a compromise of such claims as this, inasmuch as it had not the power to authorize the payment in the first instance. Whether the legislature might lawfully provide for the acceptance of a sum less than the amount paid, as a means of adjusting a claim that is doubtful, either because of supposed legal impediments in the way of recovery, or from an inability to enforce the collection, would be one thing, while to authorize a compromise by the board in accordance with its opinions of abstract justice and equity, after payment, is another. The fundamental law forbids the raising of the attorney general's salary by the legislature. Of this, not only the members, but every citizen of the State, must be supposed to be informed. The facts that the Constitution had been declared amended, and that office had been accepted under that belief, would not have enabled the relator to recover the increased salary had payment been refused, though, in a certain sense, it may be said that in "justice and equity" he had earned it, and should be entitled to it. In such case he would be obliged to suffer the disappointment; and the fact that payment was made does not materially change the situation. He has

received money to which he was not lawfully entitled. His only excuse was that he was ignorant of the law, an excuse sufficient to protect him from the criminal law, but one which does not make the money justly and equitably his, unless the existing principles of law and equity, as judicially administered, entitle him to keep it, and forbid its recovery by the State. If it were clear that the legislature had attempted to authorize the board to forego its claim, simply because the relator had taken his office and performed his duties under the mistaken belief that he was to receive the increased compensation provided by the supposed amendments, we should feel constrained to say that they had exceeded their power in the premises.

The following are some of the logical results of such a construction as is contended for by the relator:

(1) The board should not bring action if, in its opinion, the State has no legal claim to this money, because paid and received under a mistake of law.

(2) It should not bring action if, in its opinion, the State should recognize an abstract equity in the relator to keep the money received.

(3) If the board should think the claim of the State a legal and just one, it still could not bring action until the amount due should be determined by it.

(4) This determination must be reached by agreement with relator, which implies that the resolution is futile unless the relator shall consent to state an account, which obviously might be made ridiculously low at his option, or refused altogether, thereby effectively preventing action, or limiting the sum to be sued for to an amount admitted by the relator.

We are of the opinion that this resolution should not receive such construction. The preamble alludes to the unsettled condition of these matters, and the failure of this court to pass upon the rights of the parties in a former proceeding, and impliedly, at least, indicates that differences exist between the State and these officers. Reading this in the light of the last paragraph of the

opinion filed in the case of *Rich* v. *Board of State Canvassers*, 100 Mich. 465, which the legislature cannot be supposed to have overlooked, we think that it was the design to submit to the board the question of the legality of the claims by the State, upon the respective officers, for the sums so paid. This is indicated by the first provision of the resolution, which authorizes the board to ascertain the amounts paid, and by the last clause, which "requires" them to commence suit for any sums that shall be found to be due to the State. If, as relator seems to contend, this power to sue does not exist until after they have been able to agree with him upon an amount due, it is, as already said, an empty one, for they might not be able to agree. It is significant that the resolution does not say that these officers shall have a hearing before the board, nor does it in clear language state that the claims may be compromised. Relator's contention that he has a right to be heard rests on the authority given the board to ascertain the amount paid, and to inquire into the facts and circumstances thereof. The amount (in this case, at least) is not in dispute, and it appears from relator's petition that he went before the board upon a notice. Presumably, this was for the purpose of hearing his version of the facts. Just what took place does not appear, further than that an adjournment was taken, and the opinion of the attorney general sought as to the discretion and right of the board to settle the claim.

Our view accords with the opinion of the attorney general that the legislature intended that the board should determine whether or not, in their opinion, the State had a lawful claim against the relator, and, if so, the suit was to be commenced. We think that it was not designed that they should surrender by compromise a part of a claim which, in the opinion of the board, was a legal one, and then resort to a suit to determine whether it was a legal one or not, if relator should not choose to

pay; and we think there was no intention to constitute the board a tribunal, to finally settle by its conclusions, irrevocably, so far as the State is concerned, the question of whether any sum, and, if so, how much, was due the State. Had they determined that, in their opinion, the State had no legal claim for the money paid, we think the matter would not be *res judicata,* but would be open to further action. It must be plain that a decision that a valid claim exists would not conclude the relator. Indeed, his brief substantially asserts as much. If it were otherwise, the resolution would have the effect of conferring a power upon this board that properly belongs to the courts, which we think has not been attempted. It was intended that they should ascertain the facts from reliable sources, in their own way. We can think of no more proper way for them to ascertain the law applicable to such facts than to take the opinion of the legal adviser of the State. Upon such light as they were able to obtain upon the facts and law, they were to determine whether any sum was due to the State. If, in their opinion, nothing was due, their duties were at an end. If a sum was found due, and payment was refused, they had no alternative but to commence action.

We need not consider the power of the legislature to compromise a claim the payment of which, in the first instance, was clearly a transgression of the State Constitution. It is unnecessary, for the reason that we ought not lightly to infer a willingness to surrender claims of the State, except upon legal grounds. This record does not indicate a danger of loss upon these claims. Indeed, relator's petition asserts a willingness to pay such sum as shall be found to be legally and equitably due. The resolution, in our opinion, ought not to receive such construction.

Counsel have discussed and intimated a desire for a decision of the question of the validity of the claim of the State. We are asked to compel this board to proceed

and settle the amount due upon this claim. From our construction of this act, it follows that the only question for the board to consider would be whether the State has a valid claim, which can be enforced by action or suit. If it has not, they should not institute proceedings. It is plain that, under the admitted facts, the relator owes the entire amount paid to him, or he owes nothing. Hence this must depend upon whether the payment was a voluntary one, made under a mistake of law, and therefore one which, under the rule stated, cannot be recovered by the State. There is no dispute upon this record but that the money was paid and received in good faith, in the belief that the Constitution, as amended, authorized it. We think this was a mistake of law, rather than of fact; for, were we to hold otherwise, it would be difficult to find a case of a mistake of law that might not be said to be a mistake of fact. A mistake of fact was involved in the promulgation of the law, but the parties were mistaken about the law, as much as they would be in a case of the unwarranted publication of a law erroneously supposed to have been passed by the legislature. It is a general proposition, supported by the preponderance of authority, that money paid under a mistake of law, but with a full knowledge of all the facts, cannot be recovered back. A large number of cases *pro* and *con* will be found in a note to 18 Am. & Eng. Enc. Law, pp. 223-225. But there are cases which hold that this rule is not applicable to cases where ministerial officers have made illegal payments of public money to public officers. This is upon the ground that such officers are in the position of agents, and, in acting beyond the scope of their authority, do not bind their principals. The mistake is the mistake of the agent, and not that of the principal. The officer thought he had authority of law to make these payments, but in this he was mistaken. *Attorney General* v. *Perry*, 2 Comyns, 481; *Seal* v. *Dent*, 8 Moore, P. C. 319; *U. S.* v. *Bartlett*, 2 Ware, 17; *U. S.* v. *City Bank*, 6 McLean, 139;

*U. S.* v. *Kirkpatrick,* 9 Wheat. 735; *Hunter* v. *U. S.,* 5 Pet. 187; *Cooke* v. *U. S.,* 91 U. S. 397; *Bayne* v. *U. S.,* 93 U. S. 642; Story, Ag. § 398, and note; *Com.* v. *Field,* 84 Va. 26; *Heald* v. *Polk Co.,* 46 Neb. 28.   The cases cited by counsel for the relator from our own reports,[1] wherein it has been said that the State is bound by any defenses that might be set up as against private individuals, are not conclusive of this question.

There would, then, be but one legitimate conclusion for the board to reach, and as we cannot suppose that this writ is invoked to that end, and the board seems to have already arrived at that result, there is no occasion for our intervention.

The writ will therefore be denied.

LONG, GRANT, and MONTGOMERY, JJ., concurred with HOOKER, J.

McGRATH, C. J. (*dissenting*).   I am inclined to think that the legislature regarded the right of the State to recover the amount paid to relator as open to question, and, with that view, empowered the board of auditors to inquire into the matter, and adjust it.

It is well settled that money paid under a mistake of law cannot be recovered back, and, unless an exception is made in favor of the State, the case comes within the rule on the merits. In *State* v. *Railroad Co.,* 89 Mich. 481, it was held that the State was not exempt from the doctrine of estoppel; and, if so, I fail to see why, upon principle, the rule referred to is not applicable as to payments made by the State.   The doctrine of *State* v. *Railroad Co.* may be questionable; but, while it is recognized as law, I cannot concur in the opinion of the majority.

---

[1] *Michigan State Bank* v. *Hastings,* 1 Doug. (Mich.) 225; *Same* v. *Hammond,* Id. 527; *Ambler* v. *Auditor General,* 38 Mich. 746.