## OLIPHANT v. FRAZHO.

1. PUBLIC LANDS—FILLED BOTTOM LAND—PROPRIETARY CAPACITY—
   GOVERNMENTAL CAPACITY—TRUSTS.

   Filled bottom lands of Lake St. Clair, a part of the Great Lakes,
   held by the State under the Great Lakes submerged lands act
   are held not in a proprietary capacity by the State but in
   trust, in a sovereign governmental capacity, for the public (CL
   1948, § 317.291 *et seq.*; CLS 1961, § 322.701 *et seq.*, as
   amended).

2. NAVIGABLE WATERS — GREAT LAKES — SUBAQUEOUS LAND — STAT-
   UTES.

   The Great Lakes submerged lands act applies only to unpatented
   submerged lake bottom lands and unpatented made lands in
   the Great Lakes belonging to the State or held in trust by it
   (CLS 1961, § 322.701 *et seq.*, as amended).

3. STATES—LANDS PATENTED PRIOR TO STATEHOOD—TITLE.

   Title to lands conveyed by the United States patentees before
   Statehood does not pass to the State upon admission into the
   Union.

---

REFERENCES FOR POINTS IN HEADNOTES

[1–4] 42 Am Jur, Public Lands §§ 77, 78.
56 Am Jur, Waters § 459.
[5, 6] 28 Am Jur 2d, Estoppel and Waiver § 123.
Applicability of doctrine of estoppel against government and its
governmental agencies. 1 ALR2d 338.
[7] 42 Am Jur, Public Lands §§ 78–86.
56 Am Jur, Waters § 459.
[8] 42 Am Jur, Public Lands §§ 80–86.
[9] 42 Am Jur, Public Lands §§ 80, 84.
[10] 42 Am Jur, Public Lands §§ 80, 82, 84, 87, 88.
[11] 5 Am Jur 2d, Appeal and Error § 1009.

4. Public Lands — Estoppel — Filled Bottom Land — Innocent Third Parties.

Holding of trial court that the State is estopped from asserting its claim to filled lake bottom land erroneously included in description of land conveyed and platted, because the conveyance by the State, with the expanded description, coupled with the State's long delay in asserting its claim to the filled bottom land will cause injury to innocent third parties *held*, reversible error (CLS 1961, § 322.701 *et seq.*, as amended).

5. Estoppel—States—Scope of Officer's Authority.

To estop the State, the acts or conduct of the officer must be within the scope of his authority.

6. Public Lands — Estoppel — State — Expanded Description in Deed.

Estoppel will not lie against the State where a quitclaim deed of the State land office board purported to convey to landowner lands he had lost on tax sale as well as filled bottom land, as the words expanding the description must be regarded as surplusage, and beyond the authority of the State land office board to convey, and thus void as to the expanded portion of the description.

7. Same—Natural Resources—Public Interest.

The Great Lakes submerged lands act of 1955 is intended to help conserve our natural resources for future generations and is in the public interest (CLS 1961, § 322.701 *et seq.*, as amended).

8. Same—Filled-In Lands—Not Useful for Trust Land Purposes.

The legislature provided in the Great Lakes submerged lands act means by which the State could sell filled-in land no longer useful for trust land purposes, such as hunting and fishing (CLS 1961, § 322.701 *et seq.*, as amended).

9. Same—Filled-In Land—Occupiers—Title—Unimproved Value.

The Great Lakes submerged lands act provides that where land has been filled in, without title, the occupiers may obtain title to the land by paying the State for its unimproved value (CLS 1961, § 322.701 *et seq.*, as amended).

10. Same—Wrongful Takers—Private Use.

It is not inequitable for the State to require payment from wrongful takers for public trust land appropriated to their private use.

11. COSTS—PUBLIC QUESTION—GREAT LAKES SUBMERGED LANDS ACT
   OF 1955.

   No costs are allowed in suit to enjoin the dredging of a canal on
      filled-in land in Lake St. Clair, in view of public nature of
      questions involved in construction of Great Lakes submerged
      lands act of 1955 (CLS 1961, § 322.701 *et seq.,* as amended).

Appeal from Macomb; Deneweth (George R.), J.
Submitted Division 2 May 31, 1966, at Lansing.
(Docket No. 1,452.)   Decided December 8, 1966.
Leave to appeal granted by Supreme Court March
20, 1967.   See 379 Mich 755.

Complaint by William H. Oliphant and Gertrude
K. Oliphant against Rose Frazho and others to en-
join the dredging of a canal and for damages.
Joseph Prinzivalli and others intervened as cross-
defendants.   Charles Vanneste and others inter-
vened as party defendants.   The State of Michigan
intervened as party defendant and cross-plaintiff, to
assert its claim to certain land.   Judgment held
State was estopped from asserting its claim.   State
of Michigan appeals.   Reversed and remanded.

*Frederick M. Maddock* (*Frank I. Kennedy,* of
counsel), for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *Nicholas V. Olds* and
*Jerome Maslowski,* Assistant Attorneys General, for
the State.

McGREGOR, J.   All pertinent points in this case
are moot except the land title issue remaining be-
tween the appellees and the State of Michigan.   The
original suit was for the purpose of adjudicating
the right to enlarge a canal adjacent to the land in
question, and the State of Michigan intervened in
order to assert the State's claim to certain unpat-
ented land under the Great Lakes submerged lands

act, P.A 1955, No 247, as amended (CLS 1961, § 322-.701 *et seq.* [Stat Ann 1963 Cum Supp § 13.700 *et seq.*]).

The land in question is filled bottom land of Lake St. Clair beyond the patent line. The State claims it holds the land as a public trust by virtue of the aforesaid act and PA 1899, No 171 (CL 1948, § 317-.291 *et seq.* [Stat Ann 1958 Rev § 13.1121 *et seq.*]), which act in part dedicated swamp or submerged land along the borders of the Great Lakes as public hunting and shooting grounds and for the benefit of the people. These lands are held, not in a proprietary capacity by the State, but in trust, in a sovereign governmental capacity, for the public. *State v. Lake St. Clair Fishing & Shooting Club* (1901), 127 Mich 580.

The Great Lakes submerged lands act applies only to unpatented submerged lake bottom lands and unpatented made lands in the Great Lakes belonging to the State or held in trust by it. Title to lands conveyed by the United States patentees before statehood does not pass to the State upon admission into the Union. *Klais* v. *Danowski* (1964), 373 Mich 262, 263.

The position of the appellees is that the State should be estopped from asserting its claim. Appellees claim title to the land from their grantor, Emil A. Nelson, who first obtained title in 1911.

In 1927, after vacating a platted subdivision, the land in question was described by the circuit court of Macomb county as:

"Lot 5 of Assessor's Plat No. 21, a part of fractional sections 22 and 23, village of St. Clair Shores, Macomb county, Michigan."

Subsequently, some time between 1932 and 1941, the land was extended approximately 1,150 feet into

Lake St. Clair by Emil A. Nelson, pursuant to a permit granted in 1932 by the United States Corps of Engineers. Title to the easterly 865 feet of the extension beyond the patent line of Lot 5 of Assessor's Plat No. 21, et cetera, is still in dispute and the subject of this appeal.

On June 3, 1941, Lot 5 of Assessor's Plat No. 21 was bid to the State for delinquent taxes. The auditor general executed a deed therefor to the State of Michigan. On February 10, 1943, Nelson as former owner applied for a land contract from the State land office board. On May 5, 1943, a land contract was executed between Nelson and the board. The description of the land in the land contract is:

"Lot 5, Assessor's Plat No. 21, according to the recorded plat thereof, in liber 15, page 3."

Nelson subdivided the area, including the filled-in extension into Lake St. Clair, and designated the plat as "Ardmore Park Subdivision of Lot 5 of Assessor's Plat No. 21, a part of fractional sections 22 and 23, Town 1 North, Range 13 East." The plat was executed by Nelson and the State land office board on August 31, 1943, and was recorded in liber 22, page 38 of plats, Macomb county records. It should be noted that the plat of Ardmore Park Subdivision is larger than lot 5 as aforesaid by 865 feet of filled land beyond the patent line.

Nelson paid the balance due on the land contract and was given a quitclaim deed from the State land office board on November 24, 1943, with the following description of the grant:

"Lots No. 1–90 inclusive, Ardmore Park Subdivision of Lot No. 5, Assessor's Plat No. 21, a part of the fractional sections 22 and 23, town 1 north, range 13 east, village of St. Clair Shores, Macomb county, Michigan, according to the recorded plat thereof, as recorded in liber 22, page 38 of plats."

The appellees base much of their claim for estoppel on the fact that the State land office board joined in the platting of Ardmore Park Subdivision, which included the filled land, and the conveyance of the filled land to Emil A. Nelson by the State land office board, which specifically described the land as:

"Lots 1 to 90 inclusive, Ardmore Park Subdivision of Lot 5 of Assessor's Plat No. 21, et cetera."

Lots 32 to 60 of this subdivision, title to which is in dispute here, are all or partly on the filled land which is not a part of lot 5 of Assessor's Plat No. 21, et cetera. Appellees urge that estoppel should lie as to the State's right to claim title to this land because the conveyance by the State, with the expanded description, coupled with the State's long delay in asserting its claim to the filled bottom land will cause injury to innocent third parties if estoppel is denied.

The trial court held that the State was estopped from asserting its claim herein. The holding of the trial court, based on the facts of this case, is against the weight of authority. See 31 CJS, Estoppel, § 142. The holding of the trial court is also contrary to *Lawrence* v. *American Surety Company of New York* (on motion for rehearing, 1933), 264 Mich 516, 518 (88 ALR 546):

"To estop the State, the acts or conduct of the officer must be within the scope of his authority."

The appellees rely on the case of *State* v. *Flint & Pere Marquette R. Co.* (1891), 89 Mich 481, for the right of estoppel against the State. The precedent value of that old case is questionable. It has been relied on very little in this century, if at all. The Michigan Supreme Court, in *Ellis* v. *Board of State Auditors* (1895), 107 Mich 528, did not follow *State* v. *Flint & Pere Marquette R. Co., supra.* The com-

ment of Chief Justice McGRATH, in his dissenting opinion, in *Ellis, supra,* at page 537, is indicative of the Court's disregard of its earlier position on the question:

"The doctrine of *State* v. *Flint & Pere Marquette R. Co.* may be questionable, but, while it is recognized as law, I cannot concur in the opinion of the majority."

The appellees argue that estoppel should lie against the State's enforcement of the statute which was enacted for the protection of State lands on the theory that a sense of equity demands that estoppel apply.  The appellees' theory is similar to the theory advanced by the defendants in *Lawrence* v. *American Surety Co., supra.*  The Supreme Court, addressing itself to this theory, stated (p 518):

"Defendant's position is unfortunate, and appeals to a sense of equity, but apparently was due to a conception of the law different from that declared by this court.  Relief to it would not justify a rule which would permit nullification of a statute enacted for the protection of State funds, by indirection through estoppel, by an officer who has no direct power to work the result."

"Defendant also urges estoppel against the State by reason of the alleged fact that the fill was made on lands west of the water's edge at the time when made and that other property owners had not been prevented from making like fills at about the same time.  The title of the State to submerged lands in the Great Lakes is impressed with a trust for the benefit of the public.  The State has a duty to protect that trust and may not surrender the rights of the people thereto.  *State* v. *Venice of America Land Co.,* 160 Mich 680; *Nedtweg* v. *Wallace,* 237 Mich 14.  No case for estoppel against the discharge of that State duty is made by the record before us."

*People, ex rel. Director of Conservation,* v. *Broedell* (1961), 365 Mich 201, 205.

Nelson, as the former owner, was buying back only what he had lost on the tax lien. The only description of property sold for delinquent taxes was Lot 5 of Assessor's Plat No. 21, et cetera. This is the description contained in the advertisement of sale, the State deed, and the application to purchase. This is the description which Nelson lost to the State and which was subsequently deeded by the auditor general to the State of Michigan. The land contract, issued on May 5, 1943, was only for Lot 5 of Assessor's Plat No. 21, et cetera. The expanded description, which included land not part of Lot 5, Assessor's Plat No. 21, et cetera, in the quitclaim deed of November, 1943, must be regarded as surplusage. The State land office board cannot convey more than it had. Estoppel will not lie against the State in this case, as the conveyance expanding the description of the land from Lot 5 of Assessor's Plat No. 21, et cetera, was beyond the authority of the State land office board to convey, and thus void as to the expanded portion of the description.

The Great Lakes submerged lands act of 1955, as amended, *supra,* is intended to help conserve our natural resources for future generations and is in the public interest. In addition to its previously stated purposes, the Great Lakes submerged lands act of 1955, as amended, *supra,* provides relief for persons who occupy land that was dedicated to the public use.

The filled-in land in this case is obviously no longer useful for trust land purposes, such as hunting and fishing, as cottages and homes have been built thereon. The legislature anticipated such a situation and provided in the statute means by which the State could sell land no longer useful for trust

purposes. The statute (the Great Lakes submerged lands act of 1955, as amended, *supra*) provides that where trust land had been filled in, without title, the occupiers may obtain title to the land by paying the State for its unimproved value. The State now is accused by the appellees of acting dishonorably. Before the Great Lakes submerged lands act of 1955, as amended, *supra,* the State could have acted only to reclaim the land in the name of the public trust. The State did not improperly sit on its rights for 17 years, as alleged, but rather acted reasonably soon in pursuing its interests, after the more equitable relief for occupiers of State trust land was provided under the Great Lakes submerged lands act. It is not inequitable for the State to require payment from wrongful takers for public trust land appropriated to their private use.

The ruling of the trial court that the State is estopped to assert its claim in this case is reversed. The cause is remanded for a determination of the amount due the State under the submerged lands act of 1955, as amended, for the filled-in land in dispute on this appeal. No costs are awarded because of the public nature of the questions involved.

LESINSKI, C. J., and T. G. KAVANAGH, J., concurred.