## COUNTY OF WAYNE v. REYNOLDS.

1. PUBLIC OFFICERS — COUNTY CLERK — EXTRA COMPENSATION — BOARD OF SUPERVISORS—ULTRA VIRES ACTION.

1 Comp. Laws 1897, § 2477, prescribing the duties of the county clerk as clerk of the board of supervisors, requires him to perform such other duties as the board may by resolution require. Act No. 425, Local Acts 1895, fixes the salary of the clerk of Wayne county, and provides that he shall not receive any additional compensation for the performance of any duties imposed upon him by law. The clerk of said county was appointed by the board of supervisors as secretary of a sub-committee of the board, under a resolution giving him extra compensation for services rendered as such secretary. *Held,* that he was not entitled to such compensation, and that the action of the board awarding the same was *ultra vires.*

2. SAME—MONEYS ILLEGALLY PAID—RECOVERY BY COUNTY.

The action of a board of supervisors in passing upon and allowing the claim of a public officer for services which, under the express provisions of the statute, could not properly be made the basis of a charge against the county, will not preclude the county from recovering back from such officer moneys paid in reliance on such action. *Advertiser & Tribune Co.* v. *City of Detroit,* 43 Mich. 116, distinguished; *County of Wayne* v. *Randall,* Id. 137, overruled.

Error to Wayne; Rohnert, J.   Submitted February 1, 1901.   Decided April 2, 1901.

*Assumpsit* by the county of Wayne against Henry M. Reynolds to recover back money paid to defendant as extra compensation for services rendered while clerk of said county.   From a judgment for defendant on verdict directed by the court, plaintiff brings error.   Reversed.

*Allan H. Frazer*, Prosecuting Attorney, and *Ormond F. Hunt*, Assistant Prosecuting Attorney, for appellant.

*Jasper C. Gates*, for appellee.

HOOKER, J.   The defendant was the clerk of the county of Wayne, and during the time that he was such clerk he was appointed secretary of a committee of the board of supervisors having in charge the erection of a court-house for the county.   His appointment was under the following resolution:

"*Resolved*, that Henry M. Reynolds be, and he is hereby, appointed secretary of the committee on public buildings during the erection and completion of the new Wayne county building, to the end of the fiscal year."

About four months later the board passed the following resolution:

"*Resolved*, that the county auditors be, and they are hereby, instructed to pay Henry M. Reynolds the sum of $25 per month for the time he has acted as secretary of the committee on site and public buildings; and be it further

"*Resolved*, that the county auditors be, and they are hereby, instructed hereafter to pay the secretary of said committee the sum of $25 per month during the term of the committee."

Other similar resolutions of later date, covering other periods, appear.   Mr. Reynolds performed the services, and received from the board of auditors of the county the sum of $525 for such services.   This is an action brought

by the county to recover from the defendant this sum, with interest. The circuit judge directed a verdict for the defendant, and the plaintiff has taken a writ of error, upon which the case is before us.

There are two questions: *First.* Was he lawfully entitled to such compensation? *Second.* Was the action of the board in making payment conclusive and final?

The following sections of the statutes are cited as bearing upon this controversy:

Act No. 425, Local Acts 1895, provides:

"Section 1. That the * * * county clerk * * * of the county of Wayne shall receive a salary of three thousand five hundred dollars per annum; * * * and that the said salary of said * * * county clerk * * * shall be full payment for services performed by said officer for said county, or for the patrons of [his] office, and shall be in lieu of all fees, commissions, or perquisites payable to said officer under the laws of this State for the performance and discharge of any duties required by [his] office, or any office the duties of which [he] exercises by virtue thereof, and in lieu of all fees or commissions collectible by said officer for the performance of the respective duties of [his] said office where the said fees are not fixed by law; and that said officer shall receive no other or further compensation for the duties imposed upon [him], but all fees or commissions made payable to or that may be charged by [him] by virtue of said office shall be received by and on account of said county.

"Sec. 2. No officer whose salary is fixed by this act shall be entitled to any fees, commissions, or added compensation by reason of any new duties hereafter added to the office held by him.

"Sec. 3. The said county clerk * * * of Wayne county shall receive or collect no other compensation, except the salary above provided, for the performance or discharge of any of the duties of [his] office, but [he] shall pay the fees, commissions, or charges provided by law to be paid, or that [he] may fix or charge, for the performance or discharge of such duties, or any duties in [his] said office, to the county treasurer, on the last Saturday of every month, and the same shall be for the use of said county, and placed to the credit of the general fund.',

Section 2477, 1 Comp. Laws 1897, provides:

"The county clerk of each county, or in his absence his deputy, shall be the clerk of the board of supervisors of such county. It shall be the duty of such clerk: * * *

"*Fourth.* To preserve and file all accounts acted upon by the board, and on no account to allow such accounts to be taken from his office. * * *

"*Sixth. To perform such other and further duties as such board may, by resolution, require.*"

Section 6, art. 10, Const. Mich., provides:

"A board of supervisors, consisting of one from each organized township, shall be established in each county, with such powers as shall be prescribed by law."

Section 38, art. 4, Const. Mich., provides:

"The legislature may confer upon * * * the board of supervisors of the several counties such powers of a local, legislative, and administrative character as they may deem proper."

The authority of the board of supervisors of the county of Wayne in the matter of the erection of this court-house was settled in the case of *Board of Auditors* v. *Wayne Circuit Judge,* 114 Mich. 44 (72 N. W. 19). In doing this work the board of supervisors availed itself of the services of a subcommittee and the county clerk, as we have seen. We cannot say that the clerk was not required by law to perform this service, as required under the sixth subdivision quoted. He clearly was, and, that being so, the law expressly denies his right to compensation over and above his salary therefor. *Ewing* v. *Ainger,* 96 Mich. 587 (55 N. W. 996); *Hewitt* v. *White,* 78 Mich. 117 (43 N. W. 1043); *Plummer* v. *Township of Edwards,* 87 Mich. 621 (49 N. W. 876); *Board of Managers of Michigan Soldiers' Home* v. *Auditor General* (decided December 4, 1900, without opinion). The statute cited not only fixed the compensation of the clerk, but expressly forbids the payment or reception of any further sum for the duties imposed upon him by law. Rectitude of inten-

tion upon his part and that of the auditors does not change the character of the transaction, which is *ultra vires.*

A somewhat similar question arose in the case of *American Steamship Co.* v. *Young,* 89 Pa. St. 191 (33 Am. Rep. 748), and the right to recover back money was asserted and sustained in favor of a private person against an officer who took illegal fees.

The case of *County of Allegheny* v. *Grier,* 179 Pa. St. 639 (36 Atl. 353), was much like the present case. It was said:

"Public revenues are but trust funds, and officers but trustees for its administration for the people. It is no answer to a suit brought by a trustee to recover private trust funds that he had been a party to the *devastavit.* * * * With much the stronger reason is this doctrine applicable where the interests of the whole people are involved. * * * It is obviously immaterial whether the illegal payment be through design or mistake."

In Virginia the attorney general claimed and was allowed and paid extra compensation, and it was recovered back by the State in an action brought for the purpose. *Com.* v. *Field,* 84 Va. 31 (3 S. E. 882).

Story says:

"If an agent pays money for his principal, by mistake or otherwise, which he ought not to have paid, the agent, as well as the principal, may maintain an action to recover it back. * * * If an agent pays money under a mistake of fact for the principal, the latter may recover it back from the party who has received it; and, if it be paid under a mistake of the legal obligation of his principal, it may be recovered back." Story, Ag. (6th Ed.) §§ 398, 435.

See, also, *Stevenson* v. *Mortimer,* Cowp. 805.

"The act of the agent is not considered as the act of the principal except when it is within the limits of his authority. * * * But, however it may be when the money is paid by the supposed debtor, no case has gone so far as to decide that an unauthorized payment *by an agent,* from an erroneous opinion of the legal obligation of his principal, shall be binding on the principal, and

that he cannot recover back money thus unduly paid."
*U. S.* v. *Bartlett*, 2 Ware, 24, 27 (Fed. Cas. No. 14,532).

We do not lose sight of a substantial difference between the case of money paid by an officer, such as a treasurer, in the routine of his office, and money paid upon warrant after allowance by a board authorized to adjudicate upon claims, and from whose determination the law forbids an appeal, like the board of supervisors in other counties, and the board of auditors in Wayne county. As has been held in the case of *Advertiser & Tribune Co.* v. *City of Detroit*, 43 Mich. 116 (5 N. W. 72), where such a board has once passed upon a claim which it had authority to pass upon, it cannot be reviewed, and money paid upon such adjudication cannot be recovered back in an action upon the ground that the charge was excessive. To permit it would be to reopen every case where an excessive allowance had been made for services rendered, and for which there is an obligation to pay something. We have found no case which precludes such recovery when a board has allowed a claim which was wholly fictitious or expressly forbidden by law, and, with one or (possibly) two exceptions, the same may be said of claims which the law does not recognize as lawful charges against the municipality.

Our law prescribing the duty of boards of supervisors is taken from New York, where similar duties and powers are imposed and granted. It has never been held in that State that money once allowed and paid could not be recovered back in a case where the law did not recognize the claim allowed as one that could be a proper charge against the county. Thus, in the case of *Board of Supervisors* v. *Ellis*, 59 N. Y. 620, it was held that a board of supervisors had no power to audit and allow an account not legally chargeable to the county, and that if they did, and it was paid, such payment was not voluntary, and that an action lay to recover back the money paid. The case was much like the present one in all of its features. Folger, J., said:

"Doubtless, if a board of supervisors at one time acts finally upon a matter *of which they have jurisdiction,* and *as to which they have a lawful right to act,* a succeeding board may not undo what they have done, to the immediate detriment of third parties.  *  *  *  A board of supervisors has no power to audit and allow accounts not legally chargeable to their county, and, if it attempts so to do, it is an act in excess of jurisdiction, done without the power to make it valid, and is null and void."

See, also, *Smith* v. *City of Newburgh,* 77 N. Y. 130.

A more recent case contains an elaborate discussion of this subject.  Under a law which permitted the issue of bonds for the raising of funds to build waterworks, but which forbade their sale at less than par, a contract was made which was ultimately held to be within the prohibition.  The water board undertook to compromise this matter, and the court held that it was outside of their jurisdiction.  Mr. Justice Vann said:

"The statute forbade the payment from the funds of the water board, and action forbidden by statute is void.  A void act is no act, and a void payment is no payment.  Such a payment is not voluntarily made by the corporation, but by its agent, in excess of his authority and in defiance of its rights.  It is not the act of the corporation itself, but of one who without authority assumed to act for it.  *  *  *  It is a matter of grave public concern to protect municipal corporations from the unauthorized and illegal acts of their agents in wasting the funds of the taxpayers.  It is only with the utmost difficulty that municipal officers and agents can be kept within the bounds of their authority now; but once let it go forth as the settled law of the State that an illegal contract can become the basis of a lawful compromise entered into between the contractor and an agent guilty of the illegal action, and a new door will be open to municipal spoliation.  If a paving contract is let to the highest instead of the lowest bidder, in violation of a statute requiring competition, a compromise with the contractor, followed by payment of a gross sum equal to all the profits that he could have made on the contract if executed, should not enable him to keep the spoils and defy the public.  Sound public policy will not permit the courts to countenance this dangerous method of evading a

statute, for it will always be done under the claim of good faith, and the fraud beneath will be hard to discover." *Village of Ft. Edward* v. *Fish*, 156 N. Y. 363, 374 (50 N. E. 973).

See, also, *Ellis* v. *Board of State Auditors*, 107 Mich. 536 (65 N. W. 577).

Counsel cites two Michigan cases which are said to be opposed to this doctrine. One is *Advertiser & Tribune Co.* v. *City of Detroit*, 43 Mich. 116 (5 N. W. 72); the other, *County of Wayne* v. *Randall*, 43 Mich. 137 (5 N. W. 75). In the former the claimant had a valid claim, but was allowed more than the statutory price for the work. It was claimed that as to this excess the action was void, and that the amount should be recoverable in an action by the city. It was held otherwise. In the *Randall Case*, Randall, as circuit court commissioner, had charged against the county certain fees in a fraudulent debtor proceeding prosecuted before him. The board of auditors took advice and allowed his claim, and afterwards an action was brought to recover back the amount. It was held not recoverable. The only possible distinctions between these two cases and the present case are that in one the entire claim was not invalid, and that in the latter the claim was for services not a lawful charge against the county, while in the present case the statute expressly forbids payment beyond the salary provided. We think both cases are inconsistent with the doctrine announced in the cases hereinbefore cited. If the circuit court commissioner's fees were not a proper charge against the county, the board had no just reason for allowing them; and, also, if the statute fixed a limit to the price paid for printing, it had no just reason for allowing double price, or, what was equivalent, double measure. But if it be said that the last case is distinguishable, and was one where the board had jurisdiction to allow some part of the claim, that cannot be said of the *Randall Case;* for he had not rendered any services for the county for which the county was in any way or to any extent liable, or for

which the board had any authority to pay, unless it is to be said that it has jurisdiction to hear and unalterably determine, by allowance or disallowance, any kind of a claim that may be set up, not expressly prohibited by law. In the case now before us the prohibition is positive; in the other it is negative; and we see no difference in principle. Unless we are to follow these cases, we must overrule the later, if not the earlier as well, or make a distinction where there is no substantial difference. We all are of the opinion that the *Randall Case* should be overruled. It is not so clear that the other case should be, for there is force in the claim that the board had authority to determine the quantity of work done, and that its decision was final. As the case may fairly be distinguished from the present case and the *Randall Case*, we leave it for further consideration when occasion may arise.

The judgment is reversed, and a new trial ordered

The other Justices concurred.