R. J. HEATH, *et al*, Appellees, v. CHARLES E. ALBROOK, *et al*, Appellants.

Taxation: WITHHELD PROPERTY: CONTRACT WITH ATTORNEY: COMPENSATION. The contract of a county with an attorney to prosecute actions for the collection of taxes that may be discovered by the county and its agents is authorized by Code section 1374, but neither such a contract nor the statute contemplate compensation to the attorney for taxes voluntarily paid to the county treasurer, nor for advising county officers respecting their powers and duties, nor assisting in the adjustment of matters relating to the discovery of property withheld from taxation by agents of the county and in the assessment thereof.

Same. Code section 1374, as amended by Chapter 50, Acts 28th General Assembly, limits the total compensation to be paid by a county for the discovery and collection of omitted taxes to fifteen per cent of the sum collected, and where a contract has been made and the full legal compensation paid for services rendered thereunder, a subsequent contract with an attorney providing a like compensation for services rendered in the collection of the same taxes is void, and payments thereunder may be enjoined or recovered back at the suit of a taxpayer.

Claims Against a County: PAYMENT: RECOVERY BACK. Although the rule that payments made under a mistake of law cannot be recovered back extends to municipal corporations, yet a payment for services claimed to have been rendered a county under a contract made through a mistake as to the scope and legal effect of the same may be recovered, where it appears not only that the claimant was not entitled to the same but also that the payments were not audited and allowed as required by law.

*Appeal from Hardin District Court.*—HON. W. S. KENYON, Judge.

SATURDAY, FEBRUARY 13, 1904.

THE plaintiffs are residents and taxpayers of Hardin county, this state, and bring this action in equity for an injunction to restrain the payment of moneys, for an accounting, and judgment in favor of Hardin county, against defendant Albrook and certain other of the defendants, on account of moneys alleged to have been wrongfully received by them out of the county treasury. The material facts in the case are not in serious dispute, and we state them as briefly as may be: On May 7, 1900, the firm of Fleener, Carnahan & Bilderback submitted to the board of supervisors of Hardin county, then in session, a proposition in writing as follows: "We propose to assist the proper officials of your county in the discovery of property not listed and assessed for taxation as required by law as passed by the 28th General Assembly, and for our services therein we will charge your county a sum of money equal to fifteen per cent. of the taxes paid into the county treasury. Our employment to continue for the period of five years from the date hereof." On the same day the board accepted of such proposition, and by resolution employed and authorized said firm to assist the proper officials of the county in the discovery of property not listed and assessed for taxation as required by law. The resolution provides, in terms, that the compensation to be paid said firm, shall be fifteen per cent. of the amount collected on omitted property which they have assisted in discovering, and which had not been listed and assessed as required by law. At the June, 1900, meeting of the board, and after a conference upon the subject, in which the members of the board, the county auditor, and one of the members of the Fleener firm participated, the defendant Albrook was sent for, and the matter of his employment as attorney for the county to assist in the collection of taxes on discovered property was discussed. Albrook offered to accept of the employment on condition that he be paid 15 per cent. of all amounts recovered or paid in. Thereupon the board passed a resolution as follows: "Be it resolved that we hereby employ C. E. Albrook as attorney for the county to make col-

lection of taxes that may be discovered by this county and its agents Fleener, Carnahan & Bilderback, and the penalties thereon; and for such services he shall be allowed the sum of fifteen per cent. of the amount recovered, the fifteen per cent. to cover all expenses and costs." At the January, 1901, session of the board, a further resolution was passed, as follows: "It is hereby ordered by the board that the auditor draw his warrants on the treasurer upon verified accounts being filed with him for the discovery and collection of taxes on omitted property, as per contract heretofore entered into by this board, and it is further ordered that the said sum be deducted from omitted taxes collected under said contract." It appears that, upon reports being made to the county auditor by the Fleener firm of taxable property claimed to have been discovered, notices were sent out by the auditor to the supposed owners of withheld or omitted property, many of whom thereafter appeared at the auditor's office, and conferences were there had, resulting in some instances in finding that there was in fact no omission, and in other instances resulting in an adjustment as to the value of property withheld or omitted, and the years for which the same was withheld or omitted. In cases where no appearance was made, and in cases where an adjustment was arrived at, the auditor entered the property as having been discovered, or according to the adjustment, as the fact might be, upon the taxbooks of the county, and thereupon the assessments were presented to the treasurer of the county. The latter took no part in the work of adjustment. He accepted simply of the assessments as made by the auditor, and thereafter received such moneys as were voluntarily paid in under such assessments. No effort was made by him to make collections otherwise. It is not pretended that Albrook was present or assisted in each of the adjustments made.

It appears without controversy that, subsequent to his alleged employment, Albrook made an arrangement with the defendant Fleener under which members of his firm, and

the employes thereof, were to attend in a general way to the making of adjustments, and such was the course generally pursued. By the terms of the arrangement between Albrook and Fleener, the latter was to receive two-thirds of the amount allowed to Albrook by the county by way of compensation for his services. The services actually rendered by Albrook consisted in the giving opihions and advice to the county auditor, and in giving assistance in making adjustments with some of the taxpayers who appeared in response to the notice sent out by the auditor. It appears that, between the date of the employment of the Fleener firm and the date of the commencement of this action, there had been voluntarily paid into the county treasury taxes on omitted or withheld property in the sum of $43,912. On January 17, 1900, defendant Albrook presented to and filed with the county auditor a verified bill in the sum of $1,837.92 for services rendered; consisting, as stated, of writing opinions, advising the county officials in respect of the assessment and collection of taxes on withheld or omitted property, and in assisting the county officers in collecting taxes on omitted property, as per contract with the board of supervisors. On March 1, 1901, a similar bill was presented for the sum of $1,184.48; on April 3, 1901, a similar bill for $1,692.26; on June 3, 1901, a similar bill for $1,051.76; and on July 8, 1901, a similar bill for $820.35. Upon filing of each of these bills, a warrant was issued by the county auditor in favor of Albrook, which, upon presentation to the county treasurer, was paid from the county funds. The aggregate of the bills, it will be observed, was $6,586.37. It is conceded that no one of these bills or claims was presented to or acted upon by the board of supervisors before being paid; and it is further conceded that, of the amount so paid, Albrook turned over to the defendant Fleener two-thirds thereof, or the sum of $4,344.24. It is also conceded that bills were presented by the Fleener firm, under its contract, in the aggregate sum of $6,586.37, and that warrants were drawn therefor, which were paid on presentation by the

county treasurer. The bills of the Fleener firm and of Albrook were paid out of the taxes collected from omitted property before distribution thereof was made as required by law.

It is made to appear that since the commencement of this action a large amount, in the aggregate, has been voluntarily paid in as taxes on omitted property, in addition to the amount theretofore paid in, as above stated. Upon final hearing there was a decree finding that the several amounts paid to and received by the defendant Albrook were without warrant or authority of law; that the defendants Welch, county auditor, Carter, county treasurer, the members of the board of supervisors, and the defendant Albrook, should be, and they were, restrained from paying out or receiving from the county treasury any further sums under the alleged contract with said Albrook; and it was further ordered and adjudged that Hardin county have and recover from defendant Albrook the sum of $6.758.04, with interest; further, that Hardin county have and recover of the defendant Mart. Fleener the sum of $4,505.36—that being the amount, with interest, received by him from Albrook, as hereinbefore stated. The decree provides that payments made by either Albrook or Fleener shall apply in satisfaction of the judgment as rendered against the other. The defendants Albrook and Fleener appeal.—*Affirmed.*

*C. M. Nagle* and *Albrook & Lundy* for appellants.

*Boies & Boies, H. L. Huff,* and *F. H. Noble* for appellees.

BISHOP, J.—The question of the validity of the contract entered into between the board of supervisors, acting for Hardin county, and the defendant Albrook, is first presented

I. TAXATION: withheld property: contract with attorney: compensation.

for our consideration. At the outset, and making application of a very familiar principle of law, we may presume that it was intended on the part of all parties concerned to make a contract such as was authorized by law. It will be noted that, by the

terms of the resolution adopted by the board, the employment of Albrook was "as attorney for the county to make collection of taxes that may be discovered by this county and its agents," etc. Judging of the contract by its terms, no difficulty stands in the way of the conclusion that it was one altogether proper to be made. Code, Section 1374, providing for the demand for and collection of taxes on property withheld, overlooked, etc., expressly authorizes the bringing of actions by the county treasurer to recover such taxes, with interest, and penalties in case the property has been fraudulently withheld from taxation; and the section contains a provision that such actions shall be prosecuted by the county attorney, "or such other person as the board of supervisors may appoint." Certainly this gave authority to the board to contract with defendant Albrook to prosecute such actions as might be thus brought, and, assuming that the employment was intended to be confined to cases arising under or pursuant to the authority conferred by section 1374, no good reason presents itself to our minds why the contract may not be upheld, and thereunder the said Albrook be entitled to recover compensation for all such cases as may be brought by the county treasurer, and prosecuted by him. . There is nothing in the statute that limits the amount of the compensation to be paid in such cases, and there is no evidence before us from which we can say that fifteen per cent. of the amount actually recovered is so far unreasonable as to justify interference. So, too, there can be no reasonable objection to the payment of the amount of the compensation thus earned out of the moneys collected.

It does not follow, however, that such contract can be accepted as one providing for the payment to Albrook of any sum of money, predicated solely upon the moneys voluntarily paid into the county treasurer's office, and which moneys were in no wise the result of any action begun or prosecuted. That no actions were begun or prosecuted is conceded. As we understand the claim made by defendant Albrook, it is that in fact he was employed not merely to

prosecute actions which might be brought by the county treas-. urer, but, in addition thereto, he was to advise the county officers from time to time, as requested, in respect of their powers and duties, and to assist in making adjustment of disputed matters arising out of discoveries of withheld prop- erty as made by the Fleener firm, and in the matter of making proper assessments against such property; that the compensa- tion of fifteen per cent. of moneys paid in was to be in full for all such services to be rendered by him under such con- tract of employment. We do not see how the contract can be thus construed.

In the first place, there was no warrant or authority of law for the making of a contract such as defendants now con- tend for. But even were this not true, it is clear that no such contract is pleaded in justification of the payment of the moneys now sought to be recovered from the defendants. On the contrary, it is the allegation of the petition that the contract under which defendant Albrook assumed to act was embodied in the resolution adopted by the board of super- visors, and this the answer admits. In the next place, it is clear that the resolution was the only action taken by the board. It was adopted after some preliminary talk had been indulged in, and in the presence of Albrook. It follows, as we think, that the resolution must be accepted as conclusive respecting the terms of the contract. It is urged in argu- ment that, if this be the construction proper to be put upon the contract, still the services shown to have been rendered were such in character that defendant Albrook may properly be said to have assisted in the collection of the taxes paid in, and therefore he became entitled to the sums paid to him. We cannot yield our judgment to the conclusion thus con- tended for. Code, section 1374, makes it the duty of the county treasurer to demand and collect taxes on all withheld or omitted property. The county auditor has no duty or au- thority in respect of such matters, save that under the pro- visions of chapter 47, p. 31, Acts 28th General Assembly, amendatory of section 1385 of the Code, he may correct er-

rors, whether of omission or commission, in the assessment of the tax list of the current year. This we distinctly held in *Mead's Estate v. Story County,* 119 Iowa, 69. It is fair to state, however, that our opinion in the case cited was filed subsequent to the happening of the matters involved in this action. Now, in the instant case, as we have seen, the work of discovery of withheld and omitted property was all carried on in the office of the county auditor, and the services claimed to have been rendered by Albrook, up to the time this action was commenced, consisted wholly in taking part in conferences in the auditor's office; in making investigations respecting the existence of supposed withheld property, its value, etc.; in making adjustments, or attempts to make the same; and in advising the county auditor in respect of his duty in the premises.

Should we concede, however, that the contract entered into between the board and defendant Albrook was, in letter or spirit, broad enough to cover services of the character in 2. SAME. fact rendered, and should we likewise concede that compensation for such services ought not to be withheld solely because the services were rendered without the request of, and were not at the instigation of, the county treasurer, still it is manifest to our minds that payment of the sums as made to Albrook cannot be justified, in view of the plain provisions of chapter 50, page 33, Acts 28th General Assembly. Therein it is provided that the board of supervisors of any county may contract in writing with any person to assist the proper officers in the discovery of property not listed and assessed as required by law; the total charges, fees, and expenses for such service not to exceed 15 per cent. of the taxes paid into the county treasury. Such a contract had been entered into with the Fleener firm. Of this defendant Albrook was well aware, and there is nothing in the record to indicate that the contract with him was intended to supplant or in any way interfere with the Fleener contract. On the contrary, it was intended to be independent of and additional to the Fleener contract, and was so understood by all parties in in-

terest; and admittedly the Fleeneer firm has been paid in full under its contract. Now the act of the Twenty-Eighth General Assembly goes no farther than to authorize a contract, the purpose of which is to assist the proper officers of the county in the discovery of property, etc. This does not mean that one person may be employed to look up and point out the names of persons supposed to have withheld property from taxation, or to call attention to the fact merely that some evidence exists concerning property supposed to be subject to taxation, and which has not been listed or assessed, and that some other person may then be employed to investigate or follow up the pointers or clews thus furnished, and so carry on the inquiry until it shall have been made to appear to the proper officers either that an assessment should or should not be made. Quite to the contrary, there can be no such thing as a discovery of property subject to taxation, within the meaning of the statute, until it shall have been settled as a finality that the fact exists. Not only must the officer charged with the duty of making assessments be satisfied that an assessment should be made, but the fact must be judicially determined if an appeal from an assessment made shall be taken. And there can be no recovery of compensation until the existence of the withheld or omitted property has been admitted or determined beyond further controversy, and the tax assessed thereon has been actually paid into the county treasury. This makes it clear that the labor involved in making investigations, in holding conferences with delinquent taxpayers, and in making adjustments, is part of the work of discovery, and such work therefore came exclusively within the scope of the Fleener firm contract. In our judgment there can be no escape from the conclusion that the sums of money paid to Albrook were not only unwarranted under any proper construction of his contract, but, in large part, such moneys were paid for work that the Fleener firm was employed to do, and for the performance of which said firm had been already paid the full sum authorized by law. If, therefore, it were possible to construe the Albrook con-

tract as one calling for the services he is shown to have rendered—a position wholly untenable, as we think—we should nevertheless be compelled to hold that such contract was wholly unauthorized and void, and that all payments made thereunder were without authority of law. So, also, as to Fleener, it must be said that through him his firm has been twice paid for service rendered, to the extent of the payments made to him by Albrook.

II. It is contended on behalf of appellants that the decree, in so far as repayment is thereby ordered, cannot be sustained, for that it appears from the record that the pay-

3. CLAIMS against county: payment recovery back.

ments made to Albrook were made under mistake of law, and that not even a court of equity may give relief from the consequences of such mistake. We are agreed that this contention cannot be sustained. We may concede the general rule that payments made under mistake of law cannot be recovered back; and that municipal corporations, as well as natural persons, come within the operation of the rule, was our holding in *Painter v. Polk County,* 81 Iowa, 242. The reason for the rule is not difficult of discernment. Generally speaking, payments as contemplated by the rule are made either in settlement of some supposed legal liability, or, by way of compromise of some asserted liability, the existence of which is the subject of dispute. The payment of liabilities without suit, and the compromise of controverted rights, are matters highly favored in law; and so it is that courts have persistently refused to overturn or set aside settlements and compromises once made, simply because it appears that the parties have acted in accordance with an erroneous understanding of the law governing their rights. But the reason of the rule, and hence the rule itself, can have no application where, as in the case before us, money of a municipal corporation has been paid out by an officer thereof in violation of the provisions of law, and this with full knowledge on the part of the payee. Whatever may be said in respect of the scope as to subject-matter of the employment of Albrook, he was to perform ser-

vices uncertain at least as to time and extent. By Code, sec-
tion 422, it is made the duty of the board of supervisors to
audit and allow any and all claims made against the county.
This duty, and the power to act incident thereto, cannot be
delegated to any other person or officer. It was not compe-
tent, in any event, therefore, to resolve in advance, even con-
ceding that this was done having reference to the Albrook
contract—a matter of grave doubt, under the circumstances
—that all claims presented by Albrook to the county auditor,
and approved by him, should be paid from the county treas-
ury without further action. This both Albrook and the coun-
ty auditor must be held to have known. The moneys having
been drawn from the county treasury without a claim there-
for having been presented to and allowed by the board of su-
pervisors, it follows that such payments were not only unau-
thorized, but were made in direct violation of law. In legal
contemplation, therefore, the defendant stands as one holding
money without right or title thereto. We have no occasion to
determine what would be his right in the premises, had the
amounts drawn by him been legally due and owing to him
from the county. We are required to go no farther than to hold
that the moneys having come into his possession under the
circumstances shown, and having reached the conclusion that,
as matter of legal right, he was not entitled thereto, we can-
not sanction his resistance to the demand for repayment,
made solely on the ground that both he and the county officers
labored under a mistaken notion as to the legal effect and
scope of the contract under which he claimed to have been
acting. As applied to such a case, we think the strict rule as
announced in *Painter v. Polk County, supra*, ought not to be
applied. Consideration of equitable principles, rather than
the strict rule of law, should govern. Albrook is a lawyer of
ability and long experience, and his attainments were well
known to, and relied upon, by the county officers. True, he
did not dictate the form of the contract under which he was
employed, but he must be held to have known the terms
thereof. If, now, in the zeal by which it is evident both

he and the county officers were animated and actuated in respect of their efforts to compel the payment of taxes by delinquents, he misconceived his own rights in the premises, as well as those of the county officers, he should not be permitted, in a court of equity, to have profit out of his own mistake. Counsel for appellants say that no lawyer can be held, at his peril, to more than ordinary knowledge of the law, and a reasonable exercise of judgment in respect of the operation and effect of the provisions thereof, and this is true. Thus a lawyer cannot be mulcted in damages, nor can he be denied reasonable compensation for his services, solely because it is made to appear that he has in some respect misapprehended the legal rights, duties, etc., of his client. But in the case before us it is to be observed that Albrook did not misapprehend the legal rights of the county, his client, as against delinquent taxpayers. His misconception of law had relation only to the legal power of the county to employ him, and as to the character and extent of his employment. As a consequence of such mistake, he performed services for the rendition of which he was not employed, and not only that, but in respect of which no power was vested in the county to contract for his employment. Now, as the moneys paid were not pursuant to any compromise of legal rights, or in the settlement of any dispute, and it being determined that defendants had no legal or equitable right to the money thus paid, the conclusion is irresistible that the decree of the trial court was right, and should be sustained. The following authorities lend support, in principle, to the conclusion thus expressed: *Jordan v. Stevens,* 51 Me. 78 (81 Am. Dec. 556); *Northrup's Ex'rs v. Graves,* 19 Conn. 548 (50 Am. Dec. 264); *City of Covington v. Powell,* 59 Ky. 226; *Wayne County v. Reynolds,* 126 Mich. 231 (85 N. W. Rep. 574, 86 Am. St. Rep. 541); *Polk County v. Sherman,* 99 Iowa, 60; *Kagy v. Ind. Dist.,* 117 Iowa, 694; *Williams v. Hamilton,* 104 Iowa, 423; Pomeroy's Equity Jurisprudence, section 847.—AFFIRMED.

WEAVER, J., taking no part.