STATE OF IOWA, Appellant, v. LAFAYETTE YOUNG.

**State Binder:** CHARACTER OF WORK: DETERMINATION BY SECRETARY OF
1 STATE: COLLATERAL ATTACK. The determination by the Secre-
tary of State in accordance with Code, section 120, that the
State Binder has done his work in compliance with law is final
and cannot be collaterally attacked.

**State Binder:** OVER-PAYMENT: RECOVERY. Over-payment to the
2 State Binder for work done for the State under the Statute fix-
ing the compensation is not a voluntary payment and the State
is not concluded thereby, although paid on the certificate of
the Secretary of State whose duty it is to compute the amount
owing from an examination of the work; and it is immaterial
whether the overpayment was made through mistake or de-
sign.

**Right of jury to exhibits.** In an action to recover over-payments
3 made to the State Binder on the theory that he had bound
pamphlets with covers, and there was an issue as to what con-
stitutes a cover, it was error to refuse an application to permit
the jury to take the pamphlets, received in evidence upon the
trial, with them to the jury room.

*Appeal from Polk District Court.*— HON. JAMES A. HOWE,
Judge.

THURSDAY, JANUARY 17, 1907.

REHEARING DENIED, MONDAY, MAY 20, 1907.

THE defendant was the duly elected and qualified
binder of the State of Iowa for two years beginning January
2, 1899, and the plaintiff claims that during that period he
was overpaid by the State for work done in that capacity.
The petition in the first count alleges that he was paid for
binding a large number of pamphlets and documents with
covers, when these were in fact bound without covers. The
items, with the amounts paid, together with the fees allowed
by statute for binding without covers, are as follows:

|  | Amount Paid. | Stat- utory Price. | Overpay- ment. |
|---|---|---|---|
| 24,000 copies memorial day pamphlet.... | $192 00 | $ 36 00 | $156 00 |
| 15,000 copies school district pamphlet.... | 120 00 | 22 50 | 97 50 |
| 20,000 copies bird day pamphlet......... | 160 00 | 30 00 | 130 00 |
| 10,000 copies election law pamphlet...... | 45 00 | 15 00 | 30 00 |
| 5,000 copies election law document...... | 49 00 | 7 50 | 41 50 |
| 35,000 copies school law pamphlet........ | 280 00 | 52 50 | 227 50 |
| 20,000 copies circular of information pamphlet ........................... | 160 00 | 30 00 | 130 00 |
| 500 copies mining laws pamphlet...... | 4 00 | 75 | 3 25 |
| 1,000 copies treasury department circular No. 8 document.............. | 8 00 | 1 50 | 6 50 |
| .3,000 copies of treasury department circular No. 9 document.............. | 7 50 | 4 50 | 3 00 |
| 1,000 copies treasury department circular No. 10 document................. | 2 50 | 1 00 | 1 50 |
| 64,200 copies monthly review crop service document ...................... | 529 84 | 96 30 | 433 54 |

It was also alleged in this count that 35,000 copies of manual for normal instruction pamphlet, of 84 pages, was side-stitched, trimmed, and bound without a cover; that it consisted of signatures gathered by placing one signature upon another, and in that manner were bound together by being wire side-stitched; that defendant was paid 15 cents for each signature in the pamphlet, instead of 15 cents for each pamphlet, or in all $262.50 instead of $52.50, as allowed by statute. It was farther alleged that there was an overcharge for binding 6,000 bar dockets of the Supreme Court; that the signatures were folded and gathered, by placing one on another, and side-stitched and bound without cover; that he was entitled therefor to but $9. whereas he received $210. It is also alleged that he was overpaid for binding the annual report of the executive council of the State, and $5.40 for binding three copies of the annual report of the dairy association. All these items amount to $1,740.80, for which recovery was demanded.

In the second count of the petition it is alleged that a large number of reports of state officers were sewed in being bound, when the law required them to be stitched. These items, with the amount paid and the prices alleged to be fixed by law, are as follows:

|  |  | Amount Páid. | Stat- utory Price. | Overpay- ment. |
|---|---|---|---|---|
| ( 1) | 1,500 copies of the biennial report of the Auditor of State for 1899 | $240 00 | $101 10 | $138 90 |
| ( 2) | 4,500 copies of the insurance report of the Auditor of State for 1899 | 720 00 | 295 20 | 424 80 |
| ( 3) | 2,500 copies of the biennial report of the Treasurer of State for 1899 | 400 00 | 123 50 | 276 50 |
| ( 4) | 1,500 copies of the biennial report of the state board of health for 1899 | 240 00 | 111 90 | 128 10 |
| ( 5) | 923 copies of the report of the Railroad Commissioners for 1897 | 148 58 | 52 24 | 96 34 |
| ( 6) | 1,000 copies of the report of the Railroad Commissioners for 1898 | 160 00 | 45 80 | 114 20 |
| ( 7) | 1,000 copies of the report of the Railroad Commissioners for 1899 | 160 00 | 47 60 | 112 40 |
| ( 8) | 1,000 copies of the first biennial report of the board of control | 160 00 | 125 00 | 35 00 |
| ( 9) | 3,000 copies of the biennial report of the Superintendent of Public Instruction for 1899 | 480 00 | 159 00 | 321 00 |
| (10) | 3,000 copies of the biennial report of the adjutant general for 1899 | 480 00 | 240 00 | 240 00 |
| (11) | 4,500 copies of the insurance report of the Auditor of the State for 1900, volume 1 | 720 00 | 287 10 | 432 90 |
| (12) | 4,500 copies of the insurance report of the Auditor of State for 1900, volume 2 | 720 00 | 303 30 | 416 70 |

It is also alleged as a part of this count that he over-charged the sum of $200. for binding the report of the proceedings of the Academy of Sciences. Recovery is demanded on this account for $2,896.84. The State averred that payment óf these items was made by mistake of the Secretary of State, and that repayment has been demanded and refused.

In answering, the defendant admitted having received the various sums as alleged in payment of the work done, but denied that any pamphlets or documents paid for as being covered were without covers, and denied that any of the charges were other than those fixed by law and to which he

was legally entitled. By way of affirmative defense he alleged that the bills for the several items enumerated were presented to Hon. G. L. Dobson, then Secretary of State, who made due examination thereof, and, with knowledge of all the facts touching the defendant's right to compensation, audited, adjusted, and allowed the several amounts as having been earned in accordance with the provisions of law, and certified them as correct to the Auditor of State, who issued his warrant thereon as by statute required, and such warrants were honored by the State Treasurer. The defendant avers that the payments so made were voluntary, and that in any event the Secretary of State was clothed with full authority to pass upon and allow the amounts to which the defendant was entitled for work, and having done so, and certifying said amounts, the entire matter has been adjudicated and is not open to farther investigation.

At the close of the evidence for the State, the items of the second count were withdrawn from the jury. The issues raised on the first count were submitted, and a verdict returned for the defendant, on which judgment was rendered. The State appeals.— *Reversed.*

*Chas. W. Mullen,* Attorney General, for the State.

*Carr, Hewitt, Parker & Wright,* for appellee.

LADD, J.— The defendant was the duly elected and qualified State Binder of the State of Iowa for the term of two years beginning January 2, 1899, and the plaintiff claims that during such period he was overpaid for work done in that capacity. Section 141 of the Code fixes the prices which shall be paid:—

For all work done for the State in an acceptable manner, as in this chapter provided: (1) For folding and trimming all documents not stitched, ten cents per hundred copies; (2) for folding, trimming, and stitching documents not covered, fifteen cents per one hundred copies; (3) for

folding, stitching, and binding in paper covers all messages, reports, documents, not exceeding one sheet, allowing sixteen pages for a sheet, eighty cents per hundred copies of sixteen pages or less, and for each additional sheet of sixteen pages or less, eighteen cents per one hundred copies, the cover not to be counted; (4) for folding, sewing, and binding in paper covers the journals of the two houses, sixteen cents per copy; (5) for folding, sewing, and binding in muslin or cases, with gilt letters, the lettering and general style of the books to be the same as reports heretofore published, fifteen cents per copy for a volume of one hundred and fifty pages or less; twenty-one cents per copy for a volume containing one hundred and fifty pages, and not more than four hundred pages, and for each additional one hundred pages or fraction thereof, four cents; for folding, sewing, and binding Agricultural and Horticultural Society reports in board covers with muslin backs, similar in style with the Acts of the General Assembly, eighteen cents per copy; (6) for folding, sewing, and binding in half-sheep, with gilt letters for title, the lettering and general style of the books to be the same as documents heretofore published, twenty-six cents per copy for each volume of four hundred pages or less, and four cents for each additional hundred pages or fraction thereof; (7) for folding, stitching, and binding the Acts and Resolutions of each General Assembly in boards, with muslin backs and paper sides, same as Laws of 1886, ten cents per copy; (8) for folding, sewing, and binding in law sheep, same style as the reports of the Supreme Court fifty cents per copy for each volume of five hundred pages or less, and four cents for each additional one hundred pages or fraction thereof; (9) for ruling he shall be allowed the sum of seventy-five cents per hour for time actually employed; (10) for binding the Iowa Official Register, eight cents per copy for the first ten thousand copies, and six cents per copy thereafter.

It will be observed that all the items included in the second count of the petition, except one, were for binding the reports of State officers, and therefore the work should have been done in accordance with subdivision 3 and compensation made as provided therein. The difference is that the reports should have been " stitched," but instead were

"sewed," and the defendant was paid prices accordingly as fixed in subdivision 4. How this came about does not appear in the record, as this count of the petition was withdrawn from the jury, and there was no occasion for such proof. It is to be noted, however, that the State Binder did not overcharge for the character of the work done, but did a different, as the evidence tended to show, and a more costly, kind of work than the statute contemplated. In the process of sewing one signature (a sheet of paper to be folded into four, eight, or sixteen pages) is folded and placed on another until the back is completed, grooves are then cut in the back, cords inserted therein, and each signature sewed to these cords. A pamphlet is stitched by stabbing holes through the back, inserting thread or wires, and tying them. The itemized bills were presented to the Secretary of State, who, upon examining the same, certified to the several amounts as having been earned by the binder, and the State Auditor, as required by section 121 of the Code, drew warrants in his favor therefor on the Treasurer of State, by whom they were paid. In short, the State binder was paid sixteen cents per copy, when the law authorized payment of but eighty cents per one hundred copies of sixteen pages or less, and for each additional sheet of sixteen pages or less eighteen cents per one hundred copies, the cover not to be counted. It is not questioned but that the mistake of the Secretary was one of law, and not of fact, though it seems scarcely possible that a mistake of law could have been made. The statute quoted is the only one with reference to the manner of binding these reports, and paragraph 3 thereof plainly indicates that they were to be stitched. No compensation for binding them otherwise than therein directed is to be found in the Code or subsequent acts of the Legislature. It was impossible to confuse this paragraph with any other, and especially with paragraph 4, under which payment was made, for the latter is limited to the Journals of the two houses of the General Assembly.

But, conceding it to have been a mistake of law, it is contended on the part of the defendant that the payment was voluntary, and that the decision of the Secretary of State is conclusive against the State as well as the defendant. Section 120 of the Code provides that "the Secretary of State, upon completion of any printing or binding for the State, or the presentation of any bill for such printing or binding, shall make examination of the work done, and ascertain whether it has been done in accordance with the provisions of this chapter. If he finds there has been a compliance herewith, he shall certify the same, stating the amount to which the officer presenting the bill is entitled. In case such work has not been properly done, or any item of said bill has not in his judgment been earned, he shall refuse to certify as to such item, or shall state what reduced amount, if any, the officer is entitled to as compensation for such defective work." This does not authorize the Secretary of State to fix the price at which the work shall be done, nor to re-classify the reports and other documents to be bound. In so far as he is called upon to audit the accounts of the State binder as presented, he acts in a ministerial capacity, and makes the computation and executes the certificate merely to enable the binder to draw his compensation. His duties therein are somewhat like those of the board of supervisors in allowing claims against the county, or those of the city or town council in auditing claims against a municipality. These bodies represent the corporations for which they act. *Campbell v. Polk County,* 3 Iowa, 467; *Hospers v. Wyatt,* 63 Iowa, 264; *Clark v. City of Des Moines,* 19 Iowa, 199. The finding of such bodies is in no sense an adjudication, to be regarded as *res adjudicata.* The allowance of a claim presented is in the nature of settlement between individuals, and is accorded no greater effect. *Poweshiek County v. Stanley,* 9 Iowa, 511. And, in the absence of fraud or mistake, the allowance of a claim by such body can no more be

1. STATE BINDER: character of work: determination by Secretary of State: collateral attacks.

set aside than an adjustment of different items between individuals. *Poweshiek Co. v. Stanley, supra; Commissioner's Court v. Moore,* 53 Ala. 25. Even to be accorded such effect as will hereafter appear, the items allowed must be such as might have been considered by the board or council, and, if prohibited by law, the municipality will not be bound by the action of its agents.

The statute also confers upon the Secretary of State quasi judicial powers, for he is to determine whether the binding has been done in compliance with law; that is, when passing upon the bill for binding these reports, he is to determine whether they were bound as exacted by the third paragraph of the section of the Code quoted. If any of the work, or any item thereof, has been improperly done, he may reject the whole, or any particular item or items, and certify to the bill for that portion of the work done properly. In other words, he is to examine into the facts, and to determine from such investigation whether the items have been earned. To this extent his decision must be regarded as conclusive. Having the power to act, he had jurisdiction to decide, and if he decide wrongly, and error was committed in doing so, he did not usurp an unconferred jurisdiction. In other words, the authority to determine in no wise depends on the nature of the decision to be rendered. The power to decide necessarily carries with it the power to decide wrong, as well as right. Men are so fallible, and human discernment so imperfect, that the power to hear and determine necessarily carries with it the power which makes the determination obligatory, without reference to the question of whether it be right or wrong. If this were not so, the judgment of a court or the finding of a board authorized to decide would be of no particular value; for either might be attached or avoided at pleasure upon the ground that the board or court had made a mistake. There ought to be a time when such controversies end, and when the authority is conferred upon the officer or board to pass thereon, the

determination, even though erroneous, ought not to be assailed for want of jurisdiction. As well attack the judgment of a court collaterally on the ground of error in rendering it. The principle is well established that, if a matter in which a question is involved is given over to an officer for his determination, his decision is final. See Wymans, Adm. Law, section 116; *Foster v. U. S.*, 32 Ct. Cl. (U. S.) 170; *Litchfield v. Register & Receiver,* 9 Wall. (U. S.) 575 (19 L. Ed. 681); *U. S. v. Com.,* 5 Wall. (U. S.) 563 (18 L. Ed. 692); *Cary v. Curtis,* 3 How. (U. S.) 236 (11 L. Ed. 576). In determining whether the work had been done in compliance with the statute, the Secretary of State was called upon to investigate, and in determining the question necessarily exercised his judgment and discretion, and, under all the authorities, the determination of the officer in such circumstances is regarded as in the nature of an adjudication and may not be assailed collaterally. Nor is the State demanding to do so in this case.

It is conceded that the Secretary held the work to have been properly done, and of this no complaint is made. The contention of the State is that, though properly done, the Secretary certified that the State Binder was entitled to an amount of compensation therefor in excess of the fees fixed by law, and this is conclusively shown by the record before us. Under these circumstances, can the payment of the excess to the State Binder be regarded as voluntary? Where the amount to be paid is definitely fixed by law, as a salary, the State is universally held not to be bound by a mistake in amount paid by the officer issuing the warrant. Such officer is regarded as the trustee or agent of the State, and in making any payment other or in excess of that to which the law allows is plainly acting beyond and outside the scope of his duty; and this is not only within his knowledge, but that of him with whom he deals, for every one is presumed to know the law. There is a broad distinction between the acts of a

2. STATE BINDER:
overpayment:
recovery.

public officer in this respect and the agent of an individual or private corporation. In the case of the latter, it is enough that the agent be clothed with apparent authority and that third persons deal with him innocently. Then, even though he violated his private instructions, the principal is bound. Good faith requires this much, for the principal has held him out as competent to act.

But it is not so with public officers acting in a ministerial capacity. Their authority is written in the statutes. All men are charged with knowledge of the extent of such authority. Necessarily they must know when their powers are exceeded, and act at their peril. Thus, in *Ellis v. Board of State Auditors,* 107 Mich. 528 (65 N. W. 577), an amendment to the Constitution was supposed to have been adopted increasing the salary of the Attorney General and he was paid accordingly. Upon a recount it was discovered that the amendment had not received the approval of the electors, and that officer was declared liable to the State for the amount paid him in excess of the salary fixed by law. In *Com. v. Field,* 84 Va. 31 (3 S. E. 883), the Auditor of State issued his warrant to the Attorney General for fees taxed in certain cases to which the latter was not entitled, and the Commonwealth was allowed to recover. To the same effect see *State v. Hastings,* 10 Wis. 525, 535; *County of Allegheny v. Grier,* 179 Pa. 639 (36 Atl. 356); *Smith v. City of Newburgh,* 77 N. Y. 130; Mechem on Pub. Off., section 512. The principle is unassailable, for in such a situation there is no adjustment or controversy, but the open payment by the officer out of the public treasury of something that is not owing, and each party is conclusively presumed as a matter of law to be fully aware of the fact. The officer not only exceeds his actual, but his ostensible authority, and the payment, as between the State and party receiving payment, is *ex œquo et bono.* This appears from *Heath v. Albrook,* 123 Iowa, 559, where warrants were issued by the county auditor to an attorney for services the

board of supervisors were unauthorized to employ him to render, and in approving a decree directing repayment, for the benefit of the county, we there said: "As the moneys paid were not pursuant to any compromise of legal rights, or in the settlement of any dispute, and it being determined that defendants had no legal or equitable right to the money thus paid, the conclusion is irresistible that the decree of the trial court was right and should be sustained."

There are decisions holding that payments of claims in mistake of law by public officers may not be recovered; but these are planted either on the theory that the allowance of a claim is an adjudication, as *Heald v. Polk Co.,* 46 Neb. 28 (64 N. W. 376), and *County of Richland v. Miller,* 16 S. C. 236, a doctrine which, as seen, does not obtain in this State, or that the payment is voluntary. *State v. Ewing,* 116 Mo. 129 (22 S. W. 476); *Painter v. Polk Co.,* 81 Iowa, 242. These last cases rest on the proposition that voluntary payments by a public officer may not be distinguished from such payments by an individual. See *Kraft v. City of Keokuk,* 14 Iowa, 86; *Ahlers v. City of Estherville,* 130 Iowa, 272. This is not so, as was clearly pointed out in *Heath v. Albrook, supra,* in overruling *Painter v. Polk County, supra;* for the individual acts for himself, and no question of exceeding his authority is involved when he makes payment to an officer or other person. Money cannot be taken from the public treasury lawfully, save for the purposes and in amounts as directed by statute, and the officer, in doing so, acts, not for himself, but in behalf of the public; and, if he does so in violation of law, he necessarily exceeds his authority, and the public is no more bound by his act than is any principal by the unauthorized act of his agent. It is to be noticed that the opinion in the *Painter* case was based on a decision of the Supreme Court of the United States which expressly recognized this principle, but denied recovery of a salary paid Gen. Badeau on the ground that he was a *de facto* officer during the period for which he

had received it.  See *Badeau v. U. S.,* 130 U. S. 439 (9
Sup. Ct. 579, 32 L. Ed. 997).  That case, as said, was
overruled by *Heath v. Albrook, supra,* and all the more re-
cent opinions are to the effect that the rule with respect to
voluntary payment by individuals has no application, where
ministerial officers have made illegal payments of public
money to public officers.  These proceed upon the ground
that such officers are merely the agents of the public, and,
in acting beyond the scope of their authority do not bind
their principals.  In other words, the mistake is the mistake
of the agent, and not that of his principal.  The officer may
have thought that he had authority of law to make pay-
ments or to execute certificates upon which payments should
be made; but in this he was mistaken.  *Ellis v. Board of
State Auditors,* 107 Mich. 528 (65 N. W. 577); *State v.
Washoe Co. Com.,* 14 Nev. 66; *Commissioners v. Heaston,*
144 Ind. 583 (41 N. E. 457, 43 N. E. 651, 55 Am. St.
Rep. 192); *Board of Supervisors v. Ellis,* 59 N. Y. 624;
*Jones v. Com. of Lucas Co.,* 57 Ohio St. 189 (63 Am. St.
Rep. 710, 48 N. E. 882); *Wayne County v. Reynolds,*
126 Mich. 231 (85 N. W. 574, 86 Am. St. Rep. 541); *Ada
Co. v. Gess,* 4 Idaho, 611 (43 Pac. 71); *Jefferson Co. v.
Patrick,* 12 Kan. 605; *Union County v. Hyde,* 26 Or. 24 (37
Pac. 76).

In *Board v. Ellis, supra,* it was held that the board of
supervisors had no power to audit a bill not legally charge-
able to the county, and that, if they did, and it was paid,
such payment was not voluntary, and an action would lie
to recover back the money paid; the court saying:  " A
board of supervisors has no power to audit and allow ac-
counts not legally chargeable to their county, and, if it at-
tempts to do so, it is an act in excess of jurisdiction, without
the power to make it valid, and is null and void."  In *Wayne
Co. v. Reynolds, supra,* the court, after conceding that, where
the officer or board is authorized to adjudicate upon the
claims, payments thereon will be binding, said:  " We have

found no case which precludes such recovery when a board
has allowed a claim which was wholly fictitious, or expressly
forbidden by law, and with one or (possibly) two excep-
tions the same may be said of claims which the law does not
recognize as valid charges against the municipality." In
that case the clerk of the county had been allowed compensa-
tion as secretary of a committee of the board of supervisors,
which was prohibited by law, and in holding that recovery
of the amounts paid might be had by the county the court
overruled the earlier case of *Wayne County v. Randall,* 43
Mich. 137 (5 N. W. 75). In Com. v. Heaston, *supra,* the
court said, in regard to the payment of an illegal claim by the
board of supervisors: " It was no payment by the county.
The latter has properly had no part in the payment. It
could not, as a public corporation, be held to consent to the
payment or expenditure of the public money in defiance of
law. Awarding to the appellee this money, under the al-
leged facts, was in a legal sense equivalent to the unlawful
appropriation of the county's money to his own use by the
aid of its board of commissioners. The allowance and pay-
ment of the money being unlawful, the commissioners did
not act within the scope of their authority, and therefore
did not bind the county. . . . If the appellee has re-
ceived and has the money of the county under such circum-
stances that in equity and good conscience he ought not to
retain same, and which *ex æquo et bono* belongs to the county,
an action for recovery will lie in favor of the latter. . . .
If, under the facts of the case at bar, we should place the
construction on the law as contended by appellee, then a
way would be paved by which it would be rendered easy
for any person, under the guise of the legal claimant against
the county, through the aid of its commissioners, if the lat-
ter were inclined to close their eyes to legal prohibitions, to
unlawfully obtain and appropriate to his own use the public
money, and, when called upon in a court of justice to ac-
count for the same, deny the right of the county's recovery

upon the ground of *res adjudicata*. Such, in reason, is not the law." On rehearing it was said that "the money might be said to have been obtained by him [claimant] by virtue of the illegal act of the commissioners in allowing the claims."

Our conclusion rests on the general principle that the public is not bound by the acts of its officer, when outside of or beyond the scope of their authority. The public law, of which courts and individuals are bound to take notice, and of which no party can claim ignorance, is the source of the power of the Secretary of State, as well as every other official, defining such power with clearness and certainty. It does not clothe him with authority to create any new claim, or to amend statutes, or to increase the compensation of any other officer with whom his duties are connected; and, to support the bills he has certified in behalf of the State Binder, resort must be had not to his act in certifying, but to the statutes fixing the compensation to which the latter official is entitled. If payments have been made, owing to his certificates computing compensation at higher rates than those fixed by law, these, to the extent of the excess, cannot be regarded as voluntary. The money, but not the title thereto, has been transferred, and restitution may be enforced in an appropriate action. Any other rule, especially one which would countenance the contention of appellee that a public officer who has received money from the public treasury from another public officer without warrant of law may obviate restoration to the owner, the public, on the pretext that the paying officer misconceived his duty to the public, would encourage official corruption by collusion and be opposed to sound public policy. The Secretary of State was authorized to compute the amount owing the State Binder from an examination of the work done; *i. e.*, the number of reports bound and the number of sheets included in each report. It does not appear that any mistake was made in so doing. The bills were correct in every respect, save that

an amount in excess of that authorized by law was charged for binding each report and was certified to be due the Binder by the Secretary of State. The case is analogous with those in which a salary or item of fees in excess of those allowed have been paid. The statute, having fixed the compensation, by fair implication prohibited anything in excess of that allowed. Both the State Binder and Secretary of State are conclusively presumed to have known the law, and, therefore, that the former was not entitled to such excess, and that it was being extracted from the public treasury in violation of law. The rectitude of intention on the part of these officers, to which our attention has been directed, can make no difference. As observed in a somewhat similar case (*Allegheny Co. v. Grier*, 179 Pa. 639 (36 Atl. 353): " Public revenues are but trust funds, and officers but trustees for its administration for the people. It is no answer to the suit brought by a trustee to recover private trust funds that he had been a party to the devastavit. With much stronger reason is this doctrine applicable when the interests of the whole people are involved. It is obviously immaterial whether the illegal payment be through design or mistake." Compensation for work performed, or fees or salary earned, when fixed by the General Assembly, cannot be increased in this way, and any amount paid out of the public treasury by an officer, other than or in excess of that specified by statute, may be recovered back. It follows that the court erred in directing a finding for the defendant on the second count.

II. What has been said disposes of all the items claimed save those in the first count for overcharges in the matter of covers. As will be recalled, it is alleged that the State Binder was paid for binding certain pamphlets as covered, when in fact they were not, and the issue thus raised was submitted to the jury. One copy of the report of each officer, as presented to the Secretary of State, was introduced in evidence,

3. RIGHT OF JURY
   TO EXHIBITS.

and, before the jury were instructed, the Attorney General demanded that they be allowed to take these with them upon their retirement to deliberate on their verdict. This was denied; the court saying that, in view of the fact that the question of whether said pamphlets are covered or not being a question to be determined from the expert testimony, it would not be proper to permit the jury to take said pamphlets and allow them to use them in determining from their own knowledge, as well as from expert testimony, whether they are covered or not, although they may be used in argument to the jury. The practice in trials at the common law was against allowing the jury to have the papers introduced in evidence. *Farmers' & Manufacturers' Bank v. Whinfield,* 24 Wend. (N. Y.) 419. The reasons for this have disappeared, and, in the absence of statute, it is now pretty generally held to be discretionary with the trial court. *People v. Cochran,* 61 Cal. 548; *Canning v. Harlan,* 50 Mich. 323 (15 N. W. 492); *Starke v. Wolf,* 90 Wis. 434 (63 N. W. 755; 12 P. & P. 390 *et seq.*). Our statute provides that, " upon retiring for deliberation, the jury may take with them all books of accounts and all papers which have been received as evidence in the cause, except depositions, which shall not be taken unless all the testimony is in writing and none of the same has been ordered to be struck out." The language is not mandatory, and therefore the court, in the absence of a request, does not err in omitting to send the papers out with the jury. *German Savings Bank v. Citizens' National Bank,* 101 Iowa, 530. The court may properly do so on its own motion or at the instance of the jury. *Barker v. Town of Perry,* 67 Iowa, 146; *Peterson v. Haugen,* 34 Iowa, 395. When requested by either party, the papers and books received in evidence should be sent out with the jury, and refusal to do so is error, which, like other errors occurring during the trial, will be presumed to have been prejudicial, unless the record indicates otherwise.

The appellee insists that, owing to the nature of the

issue, no prejudice could have resulted from not allowing the jurors to inspect the pamphlets. None of these had covers in the sense of that word as commonly understood. But there was evidence tending to show that the word "covers" has a meaning peculiar to the binder's trade, and the issue submitted to the jury was whether the pamphlets were bound with covers, as the term is used by persons engaged in the trade or business of binding pamphlets. Two witnesses called by the State, and eight called by the defendant, as well as the latter, testified that, when one signature (a sheet which is folded so as to make four, eight, or sixteen pages) is folded and inserted into another so folded, the latter, in binder's parlance, is regarded as a cover. One witness on the part of the State testified that none of the pamphlets had covers, and that, prior to the trial, he had never heard of the outside leaves of a pamphlet being called a cover, nor that, by inserting one folded signature inside of another, the outside leaves would thereby become a cover. Another witness was of the opinion that part of the pamphlets were without covers and the remainder with them. It thus appears, then, that the jurors were called upon to determine (1) whether the term "covers" was employed in the trade or business of binding with the meaning as contended by the appellee; and (2) if so, whether all the pamphlets were bound. In determining either issue, the jury was entitled to pass upon it in the light of their experience, common sense, and judgment. The evidence of the experts was valuable in aiding them to reach a correct conclusion, and possibly there may be cases where the facts are so exclusively within the knowledge of experts that the decision should be based on their testimony alone. But here there was a dispute as to whether the word "covers" had any different meaning among binders than that accorded it in common parlance, and certainly an examination of the pamphlets said to be bound, in the light of the evidence of the experts, would have assisted the jury in passing upon that issue. In determining

such a question, the reasonableness of the different contentions is of great importance, and in no better way could this be brought home to the jury than by looking at the pamphlets themselves.

This thought is emphasized by the suggestion of counsel for appellee that the jury could not ascertain from such inspection whether the pamphlets were bound or not; that even the experts experienced great difficulty in ascertaining the fact. If this were so, and the covers of such character as to be imperceptible, it was a circumstance to be considered in saying whether the claim that there were covers was but a myth, as intimated by State's witness, or were such as recognized by the trade. It would seem, however, that if one signature were placed within another, instead of one signature on top of another, after being folded, this ought to be apparent from an examination of the pamphlets; for in that event the two outside leaves must have been a part of the same sheet, and, if so, this could have been ascertained by an examination. This is evident upon examining any pamphlet without covers, as commonly understood. The briefs and abstracts of this court are usually bound by stitching, the folded signatures being placed one on top of the other; but occasionally one signature is inserted within another, leaving one sheet, or part thereof, constituting outside pages or cover, as defined by the witnesses for the defendant. This being so, it is evident that an inspection of the pamphlets introduced in evidence would have been of assistance in deciding the issue whether they were " covered," in the sense that term was employed by the witnesses for defendant. The pamphlets were a part of the evidence in the case, and the court erred in withholding them from the inspection of the jury, and in withdrawing them from its consideration as was done in the fourth instruction. The testimony of the experts was in conflict, and in weighing the evidence and determining which should be accepted the jurors should have been allowed to compare such testimony

with the other evidence in the case and exercise their judgment in the light of their experience, common sense, and common knowledge.

Owing to the errors pointed out, the judgment of the district court is *reversed*.