DUBUQUE COUNTY, Appellant, v. T. J. FITZPATRICK and the UNITED STATES FIDELITY AND GUARANTY COMPANY.

**County Attorneys:** EXTRA COMPENSATION.  A board of supervisors has no power to authorize payment to a county attorney of compensation, in addition to his legal salary, for services which he is required by statute to perform as a part of his official duty; nor for service which is a part of the duty of the board to perform, and which it can not delegate; although he might have had a deputy who would have been entitled to such extra compensation.

*Appeal from Dubuque District Court.*—HON. ROBERT BONSON, Judge.

FRIDAY, MAY 14, 1909.

REHEARING DENIED FRIDAY, OCTOBER 1, 1909.

SUIT to recover money alleged to have been wrongfully received from the plaintiff.  A demurrer to the answer was overruled, and judgment was rendered against plaintiff for costs, and it appeals.—*Reversed.*

*P. J. Nelson,* for appellant.

*Martin J. Wade* and *T. J. Fitzpatrick,* for appellees.

SHERWIN, J.—The defendant Fitzpatrick was elected

county attorney for Dubuque County for the years 1903 and 1904 and served during that period. On the 23d of January, 1903, the board of supervisors of Dubuque County fixed the salary of the county attorney for the ensuing two years at $1,500 per year and resolved that no compensation should be allowed for a deputy county attorney. On the same day, however, and, as we understand the record, in the same resolution which fixed the county attorney's salary, it was provided as follows: "It was also ordered that T. J. Fitzpatrick be employed as attorney of the board of supervisors of Dubuque County, Iowa, to pass on and audit all bills of justices of the peace, constables, witness fees, coroner's fees, etc., and such other matters as may be submitted to him by the board of supervisors, outside of his regular duties as county attorney, and that he be required to attend all meetings of the board of supervisors whenever called upon, and that he be allowed, as compensation therefor, the sum of $1,000 per annum." The foregoing provision of the resolution was adopted, and thereafter during the term of his office said defendant was paid $2,500 per year for his services as county attorney and for the service performed under the employment designated in the resolution. This action is to recover the amount paid for Mr. Fitzpatrick under the provisions of the resolution. In his answer the defendant, after admitting the adoption of the resolution and the receipt of payment thereunder, alleged: "That under the law he, as county attorney, was entitled to receive the sum of $1,500 per year, and was further entitled to the service of a deputy at a salary of $1,000 per year; that under such employment of the county attorney and a deputy for the county attorney as aforesaid the county of Dubuque would be entitled to the performance of such duties as were imposed by law upon the said officers as county attorney and deputy, who would not be required to perform any duties outside of the duties imposed by law." And further;

That ever since the creation of the office of county attorney in 1888, it was, with the exception of one term of two years, the uniform practice of the board of supervisors of Dubuque County to pay to the county attorney a salary of $1,500 per year, and then, instead of the employment of a deputy, to engage the county attorney for the performance of duties outside of his duties as county attorney, and to pay him therefor the sum of $1,000 per year; the county attorney, under this arrangement, to employ all his necessary assistants without expense to the county.    That in 1903, after the election of the said T. J. Fitzpatrick, the board of supervisors conferred with him in regard to the salary, and thereupon the said T. J. Fitzpatrick explained to the board that he was willing to proceed upon the salary of $1,500 per year, and a deputy at $1,000 per year, or that he was willing, if the board desired it, to make a contract the same as had been made by all previous county attorneys except during the one term as aforesaid, and under said contract to bind himself to perform all duties which the board might impose upon him outside of his duties as county attorney.    That thereupon the board of supervisors, with knowledge of the large amount of work and business which had to be transacted in the interests of the taxpayers of Dubuque County, which business was not included in the legal duties of the county attorney, believing that it was for the best interests of the taxpayers of the county to continue the plan and arrangement which had been carried out by the board of supervisors for so many years, proposed to the said T. J. Fitzpatrick that he should bind himself to perform all the duties of all kinds in the interests of the county which might be imposed upon him by the board of supervisors, and that he should receive for such service the sum of $1,000 per year, as aforesaid.   That thereupon the said T. J. Fitzpatrick waived his legal right to have a deputy appointed by the board, and assumed the obligation to personally perform the duties of county attorney, or to procure its performance at his own expense, and thereupon accepted the proposal of the board aside from his duties as county attorney, and thereupon the said board of supervisors, acting in good faith, and acting, as they believed, for the best interests of the county, passed the reso-

lution complained of, as set forth in plaintiff's petition. That acting under and by virtue of said resolution, said T. J. Fitzpatrick entered upon the performance of his duties as county attorney, and entered upon the performance of his duties under the resolution, and that in compliance with said resolution he was present at the meetings of the board, and that he did, outside of his duties as county attorney, and under said resolution, figure up and estimate and correct the monthly reports of the justices of the peace and constables, not only passing upon the correctness of the computations and assessments, but making independent investigation to ascertain if the services charged for had been performed. That he likewise performed said duties of computation, inspection, investigation and correction of the fees of constables, witnesses in criminal cases, coroners, etc., as required in said resolution. That, furthermore, under the direction of the board of supervisors, he was required to, and did, investigate the facts as to the confinement of patients in insane asylums from Dubuque County, and also investigated their property rights and the property rights of their relatives who might be responsible for them to the county, so that the liability of various parties to the county under the law, for treatment, was determined. That likewise he was required to, and did, perform for the board of supervisors duties in investigation of the liability of those receiving poor relief, or the relatives who might be legally liable for the support of those receiving poor relief, and that in several cases he recovered property for the county of considerable value, performing all of the duties pertaining to the recovery of such property, including the transfers and examination of abstracts and title, procuring in one case the appointment of a guardian, and performing all other acts necessary to serve the county in recovering such property. That he was likewise by the board required to, and did, investigate certain bills and charges for expenses of one Steiner, sheriff of Dubuque County, investigating the facts with reference to whether the expenses charged for in a bill rendered to the county were in fact rendered, and making full investigation and report thereon to the board.

The demurrer attacked the allegations of the answer

above set forth on the ground, generally, that they do not present a defense to the action, and, specifically, because the custom pleaded is the contravention of the statute and is not a defense, and because the resolution relied upon for the payment of $1,000 per year constitutes no defense and is without legal force or effect.

The demurrer should have been sustained. The quoted allegations of the answer conclusively show that the agreement embodied in the resolution under which the defendant seeks to justify the action of the board and his own action in receiving $1,000 a year more than the highest legal salary that could be named by the board was without authority of law and void. Chapter 9 of title 3 of the Code fixes the duties of county attorneys, and thereunder he is required to "collect and pay over to the person or officer entitled thereto all money due the State or county, so far as he may be able to collect the same." Section 301. And section 302 is as follows: "He shall, without compensation, give opinions and advice to the board of supervisors and other county officers when requested to do so by such board or officer, upon all matters in which the State or county is interested, or relating to the duty of the board or officer in which the State or county may have an interest, but shall not appear before the board of supervisors in the trial of any cause in which the State or county is not interested, or in applications to establish, vacate or alter highways." Other sections of the statute fix the compensation of county attorneys and their deputies, but we need not quote them. It is sufficient to say that the highest salary that could legally be paid the defendant in Dubuque County was $1,500 per year, and that the largest amount that could legally be paid a deputy was $1,000 a year.

It will at once be conceded that the county attorney can not be required to perform any duty save such as the law requires of him. *Bevington v. Woodbury County*, 107

Iowa, 424. But when we are told the work that he was employed and called upon to do, as stated by him in his pleading, we find that in nearly every particular it was either a duty enjoined upon him by law or one placed upon the board of supervisors without authority to delegate the same. Thus it was his duty to appear before the board when requested to do so and to advise the board, not only as to matters in which the county and State were interested, but as to its duty in relation to such matters. It was clearly the defendant's duty as county attorney to investigate the property rights and liabilities of all persons who might be liable to the county for the support of insane persons or paupers. He was also bound to advise the board, after due investigation, of course, as to the correctness of charges made against the county by the sheriff. The only specification in the answer that indicates the performance of services outside of his legal duty is the one relating to "figuring up" and estimating and correcting the monthly reports of justices and constables. Such services were not part of the attorney's duty. The duty either devolved upon the auditor or the board of supervisors, and in either event the board was without authority to employ high-priced legal talent for purely clerical work, and that work for which the county was already paying. Passing upon the correctness of the reports and upon the charges for services was a part of the duty of the board of supervisors which could not be delegated. Code, section 422; *Heath v. Albrook,* 123 Iowa, 559; *Massie v. Harrison County,* 129 Iowa, 277.

It is quite likely that a board with power to audit and pass on bills may employ an expert accountant in certain cases where the accounts or bills are complicated and require expert knowledge; but the final act of auditing must be performed by the board, and it is evident from the defendant's answer as a whole that he does not claim the extra $1,000 per year for purely clerical work or for an

accountant's work. The real purpose of the board and the defendant, as shown by the answer, was to so arrange the matter that the county attorney might receive the pay allowed by law for himself and a deputy and do all the work himself, if he saw fit so to do. Such a contract the board clearly had no authority to make. It was illegal from its very inception, and no length of time could purge it or estop the county from repudiating it, whether the agreement was made in good faith or not. Not a case cited by the appellee supports his claim of right to the money in question.

The ruling on the demurrer was wrong, and the judgment must be, and it is *reversed*.