COUNTY OF POCAHONTAS et al., Appellees, v. KATZ-CRAIG CONTRACTING COMPANY, Appellant.

CONTRACTS:   Construction—Ambiguous Contract—Evidence to Aid
1. Construction.   Extraneous evidence is admissible to show the sense in which one party to an ambiguous contract understood its terms, and that the other party had knowledge of such understanding.   (Section 4617, Code, 1897.)

PRINCIPLE APPLIED:   After a public ditch had been partly excavated, the plans were changed.   The contractor had already done some of the work, and been paid the sum of $1,750. When the changes were made, the contractor mailed to the supervisors a proposition relative to the price to be paid in view of the changes, and requested that, if his proposition were accepted, he be sent a copy of the resolution of acceptance.   The proposition would bear the construction (1) that the contractor was to have a stated sum *in addition to the* $1,750 *already paid*, or (2) that he was to have the stated sum *less the* $1,750 *already paid.*   The auditor, in transmitting to the contractor a copy of the resolution accepting his offer, stated, in substance, that the board's understanding of the contractor's offer was according to the second construction.   Such was, in fact, the view of the board, but it does not appear affirmatively that the board *instructed* the auditor to so state to the contractor.

*Held*, the letter was admissible as bearing on the issue whether the contractor had reason to know that the board was construing his offer in a sense different than he was construing it.

EVIDENCE:   Presumptions—Official Acts—County Auditor as Clerk
2. to Supervisors.   Whether a presumption, favorable to public interest, may be indulged that a county auditor, in business cor-

respondence relative to matters then pending before the board of supervisors, was acting at the direction of the board, *quaere.*

**PAYMENTS:** Recovery of Payments—Excess Payments by Public
3   Officers—Mistake. Payments made to a contractor for the construction of a public drainage improvement in excess of the amount due under the contract may be recovered, especially when an element of mistake of fact enters into such payment.

PRINCIPLE APPLIED: The sum of $4,425 was to be paid a contractor for excavating a public drainage improvement. As the work progressed, the engineer made estimates, and the same were paid by the county auditor, to the extent of some $1,758, without the knowledge or authority of the board of supervisors. On the completion of the work, the board allowed the final payment, but did so without knowing of the $1,758 payments.
*Held,* the excess payments were recoverable.

*Appeal from Pocahontas District Court.*—D. F. Coyle, Judge.

DECEMBER 14, 1917.

Action to recover an alleged overpayment on a contract for the excavation of a drainage ditch. Verdict for the plaintiff by direction of the court, for the full amount claimed. Defendant appeals.—*Affirmed.*

*Robert Healy,* for appellant.

*F. C. Gilchrist* and *J. M. Berry,* for appellees.

Stevens, J.—I.   On April 8, 1908, the
**1. Contracts:**
construction:
ambiguous
contract: evi-
dence to aid
construction.
board of supervisors of Pocahontas County entered into a contract with defendants for the construction and excavation of a drainage ditch in Drainage District No. 29 in said county, for an agreed consideration of $31,700. On January 31, 1910, after a portion of the work covered by said contract had been performed by the defendant, it developed that certain changes and alterations were neces-

sary in some of the ditches to be dug as a part of said drainage system, and the original contract was modified as hereinafter stated.

On January 31, 1910, the defendant wrote a letter to the board of supervisors of Pocahontas County as follows, to wit:

"Omaha, Nebraska, Jan. 31, 1910.
"Board of Supervisors, Pocahontas County, Iowa.
"Gentlemen:

"Concerning our contract in Drainage District No. 29, dated April 8, 1908, we now offer to have the same set aside by mutual agreement, on the following basis, to wit:

"1.   We will complete Section 10 as described in our contract according to plans, specifications and contract within 30 working days after the frost is sufficiently out of the ground in the spring of 1910 to permit work.

"2.   You shall pay us in the manner set forth in the contract the sum of $4,425 as compensation for the work now already done by us in the district and for the completion of said Section 10 according to Paragraph 1 of this letter.

"3.   You may accept this proposition at any time on or before February 15, 1910, in which event you shall pass resolution accordingly and post in the United States mail addressed to us at 851 Brandeis Bldg., Omaha, Nebr., notifying us of your acceptance.

"4.   The making of this offer by us or the consideration of it by you shall not be deemed to be a waiver of any rights now had by either party; but we reserve the right to withdraw this offer at any time before its acceptance.

"Yours truly,

"Katz-Craig Constructing Co.

"By J. B. Katz, Secy."

Subsequently, and on February 11th, the board of supervisors passed a resolution accepting the offer of defend-

ant contained in said letter, the material portion of which is as follows, to wit:

"Therefore be it Resolved: That the report of said engineer so filed this day and the plans, changes, alterations and enlargements recommended by him seem to be expedient and meet with the approval of this board and the same are hereby approved; that all persons whose lands will be taken by such changes shall be given notice as provided by the law as it appears in Section 1989-a3 of the Supplement to the Code of Iowa as now amended; that the county auditor is hereby directed to cause notice to be given in this matter as by law provided; that the proposition and offer of the Katz-Craig Contracting Co. dated January 31, 1910, and filed this day with the auditor is hereby accepted; that notice of this acceptance together with a copy of this resolution be mailed to said company according to the terms of such offer; and that the report of the commissioners appointed to classify the lands benefited by the location and construction of such drainage district filed on December 1, 1909, and the apportionment therein made be and the same are hereby annulled and set aside".

Payments made to defendant previous to January 31, 1910, are as follows:

| | |
|---|---:|
| August 27, 1909 | $  499.68 |
| September 23, 1909 | 631.01 |
| January 19, 1910 | 618.48 |
| Total | $1,749.17 |

Subsequent payments were made as follows:

| | |
|---|---:|
| March 7, 1910 | $  528.00 |
| May 20, 1910 | 1,254.84 |
| July 30, 1910 | 2,675.83 |
| Total | $4,458.67 |

—making the total amount received by defendant for the work done in said drainage district, $6,207.84.

Plaintiff alleged in its petition that, by oversight, mistake, or on account of the fraud of the defendant, it was paid $1,782.84 over and above the amount due, and plaintiff now seeks to recover this overpayment. As instructed by the resolution of the board, the county auditor testified that, on February 12, 1910, he forwarded to defendant by mail a certified copy of the resolution accepting its offer, enclosing therewith a letter signed by him as follows:

"February 12, 1910.

"Katz-Craig Contracting Co., 851 Brandeis Bldg., Omaha, Neb.

"Gentlemen: On yesterday by resolution the board of supervisors of Pocahontas County, Iowa, accepted the offer which you made to it at Omaha dated January 31, 1910, which offer was submitted through Mr. F. C. Gilchrist, attorney, and which has reference to your contracts in Drainage District No. 29. A copy of such resolution, duly certified, is enclosed herewith and made a part hereof. I am now giving you this notice and sending you this resolution in order to comply with Paragraph 3 of the offer.

"You have already drawn in warrants about $1,749.17, so that there will still be due you when you complete the work in Section 10 the further sum of $2,675.83, thus making the $4,425 named in the offer so accepted. This is the understanding the board has of the terms of your offer. I think it is correct."

The real controversy in this case arises out of the different interpretations placed by the respective parties upon defendant's letter of January 31st. The interpretation placed thereon by the plaintiff in its pleadings and in the trial below was that defendant offered to complete the excavation of the ditches required by the enlarged and altered plan of the engineer for $4,425, which sum was also to be in full for all work performed by defendant in said district prior to as well as after January 31st, the date of defend-

ant's written offer. On the other hand, it is contended by appellant that its offer of January 31st is plain and unambiguous, and will bear no other construction than an offer to complete the improvement as changed, according to the plans and specifications of the original contract, for $4,425; but that payments already made were earned and paid for services under the original contract, wholly without reference to the contract as modified. Appellant treats the original contract as substantially abrogated and abandoned, and the offer of January 31st and the acceptance thereof by the board of supervisors as the real contract between the parties. It is clear, however, that the effect of the new arrangement was to modify the original contract only in the particulars stated in the letter of January 31st.

The offer of January 31st refers specifically to the plans and specifications for the improvement, and the contract then in force between the parties. No evidence of the dimensions of the excavations to be made by defendant, of the number of yards of earth to be removed, the character of the particular work, nor the manner in which same was to be done, was offered upon the trial.

It is apparent, however, from the record that the excavation required by the original contract was much more extensive than that covered by the contract as modified. Counsel for defendant objected to the offer of the auditor's letter of February 12th, and particularly to the last paragraph thereof, on the ground that same was incompetent, immaterial, and irrelevant; that same sought to contradict and vary the records of the board of supervisors; that same was written after the contract between the parties had been consummated by the acceptance of defendant's offer by the board; that the interpretation and understanding of the county auditor were in no sense binding upon the defendant; and that same was merely a voluntary, unauthorized statement on the part of the county auditor.

In its letter of January 31st, defendant

2. EVIDENCE:
presumptions:
official acts:
county aud-
itor as clerk
to supervisors.

reserved the right to withdraw its offer at any time before acceptance, and requested that a copy of the resolution accepting same be forwarded by mail to it at its office in Omaha, Nebraska. The resolution of the board directed the county auditor to notify defendant of the acceptance of its offer, and to forward to it a copy thereof. The county auditor stated in his letter to defendant that he was enclosing the copy of the resolution and notifying it of the acceptance of its offer, upon the order of the board of supervisors. The receipt of this letter by defendant was notice that the writer thereof was carrying out the directions of the board. It was apparent therefrom that the auditor was also complying with the request of defendant that notice be sent it of the acceptance of its offer. The resolution, it is true, made no reference to the matters contained in the last paragraph of the auditor's letter; but he was the clerk, and kept the records of the proceedings of the board of supervisors in drainage matters, and, as a matter of common knowledge, usually attends the meetings thereof. His official duties require him to draw all warrants on the drainage funds, give notice in drainage proceedings, and to perform other duties in relation thereto; all of which was, of course, known to the defendant.

It may be conceded that the county auditor could in no way vary or alter the terms of the contract between the parties hereto, and the letter in question was not admissible for that purpose, nor was it at all material what interpretation he personally placed upon the contract; but, in our opinion, the portion of the letter above referred to was material and competent, and throws much light upon the meaning of the contract under consideration.

Courts, in the interpretation of contracts, will always give consideration to the interpretation placed thereon by

the parties, and such interpretation is often controlling. The evidence, without conflict, shows that the county auditor deposited the letter in question in the United States mail, properly addressed to defendant at Omaha, Nebraska, and in the absence of evidence to the contrary it will be presumed that same was received by it in due course of mail. That it was in fact received is shown by the registry return receipt offered in evidence by plaintiff. Upon receipt of the above letter, defendant knew that the county auditor, who was the official clerk of the board of supervisors, and who kept the record of its proceedings in drainage matters, was seeking to inform it of the interpretation placed upon its offer, and the understanding the board of supervisors had thereof. The question presented is not whether the defendant was bound by the alleged interpretation of the contract by the county auditor, but whether the letter, under the circumstances, was sufficient to require the defendant to take notice of the information therein contained.

As above stated, defendant, in its offer of January 31st, specifically reserved the right to withdraw its offer at any time before acceptance, and, if same were accepted by the board of supervisors, defendant requested acceptance by resolution and notification thereof by mail, so that the notice of the county auditor to defendant was a part of the transaction, and related directly to the final consummation of the contract.

By Section 4617 of the Code it is provided that:

"When the terms of an agreement have been intended in a different sense by the parties to it, that sense is to prevail against either party in which he had reason to suppose the other understood it."

Probably this section is intended more particularly to apply to executed contracts than to matters which have misled one of the parties into making same, but in the case at bar the terms of the modification of the original contract

were 'fully and explicitly stated in defendant's offer, and only the formal acceptance thereof by the board of supervisors was necessary to make the same a binding obligation upon the parties.

Defendant's letter of January 31st requested, as above stated, that it be notified of the action taken by the board of supervisors, and the resolution of the board, copy of which was forwarded to defendant, directed the auditor to notify it of the acceptance of its offer and to forward to it a certified copy of the resolution; so that it may fairly be stated that the county auditor, in writing the letter, was observing both the request of the defendant and the order of the board of supervisors.

The letter was sufficient notice to the defendant that the board understood its offer in an entirely different sense from that which defendant now contends is the meaning thereof, and was thereby induced to accept same. Defendant must have known this fact before it entered upon the work under the contract as modified. The specific provision of Section 4617 is that, under such circumstances, the contract is to be interpreted so as to give effect to the sense in which defendant had reason to believe the board of supervisors understood it. Defendant owed the duty to the other party of acting in good faith, and, before it entered upon the work, it knew that the board of supervisors had erroneously interpreted and understood its offer, or at least had such notice thereof as imposed upon it the duty of making inquiry in regard thereto. Defendant could not go ahead upon its own theory and understanding of its offer, with notice that the other party understood the contract in an entirely different sense from that intended, and, after the work had been completed, for the first time advise the board that it was mistaken in its understanding of the contract. *Field v. Eastert Bldg. & Loan Assn.*, 117 Iowa 185; *Cedar Rapids Nat.*

*Bank v. Carlson,* 156 Iowa 343; *Prouty v. Tallman,* 65 Iowa 354; *Ubbinga v. Farmers' Sav. Bank,* 108 Iowa 221.

Section 4617 applies only when there is some ambiguity in the contract. An unambiguous writing cannot be varied by parol; and, where there is no doubt in the meaning of the parties, there is no room or necessity for construction. It is contended by counsel for defendant that everything that had been done, and the payments made under the old contract, were to be abandoned, and the work completed under the new contract for $4,425; but defendant's letter proposed the sum named "as compensation for the work now already done by us in the district, and for the completion of said Section 10 according to Paragraph 1 of this letter." The work already done was under the original contract, and the offer must be held to have included some part thereof in the price fixed. Defendant insists that this provision of the contract was not intended to apply to work already done for which payment had been made, but it does not so state, and the contract is ambiguous in this respect: it is not clearly stated what work already done was to be included in the price fixed by the new contract. The letter offered in evidence throws light upon this question.

It is improbable that defendant would, with reason to suppose that the board of supervisors understood the offer and contract in a sense not intended, have entered upon and completed the work without calling the attention of the board thereto. Good-faith dealing with the board required it to do so. The contract was susceptible to the meaning placed thereon by the board, and defendant knew that it had so construed it.

The warrants drawn by the county auditor were without the knowledge of the board, and the payments made were in excess of the amount to which defendant was, under the contract, entitled. The interpretation now placed upon

the contract by defendant would enable it to retain these excess payments, but it acquiesced in the construction of the contract now contended for by plaintiff, with full notice that the board understood it in a different sense; and the sense· in which the board understood same must prevail. The letter was admissible.

II. It is also contended by counsel for defendant that the payments made to the defendant were voluntary and cannot be recovered. The general rule that payments made in excess of the amount due, where no fraud or misrepresentation is shown, or by reason of a wrong construction of the terms of a contract, and not under a mistake of fact, cannot be recovered, is not applicable to this case. Each member of the board of supervisors testified that he did not know of the payments to the defendant of $528 on March 7th and $1,258.84 on May 20, 1910, at the time the board accepted the work and ordered the warrant of July 30, 1910, for the balance due by the engineer's estimates for $2,675.83, to be drawn; and the auditor testified, in substance, that same were made on estimates of the engineer, without the knowledge or authority of the board of supervisors. The auditor, in drawing the warrants in favor of the defendant, was acting as a public officer, and the funds upon which the same were drawn belonged to the drainage district, but were collected by the county treasurer under the statute, and paid out only upon warrants drawn by the county auditor. Payments thus made are not voluntary in the sense that payments made by one individual to another may be, and plaintiffs were not estopped thereby to maintain this action. *State v. Young,* 134 Iowa 505; *Dubuque County v. Fitzpatrick,* 144 Iowa 86; *Heath v. Albrook,* 123 Iowa 559; *Adair County v. Johnston,* 160 Iowa 683; *Humboldt County v. Ward Bros.,* 163 Iowa 510.

3. PAYMENTS: recovery of payments: excess payments by public officers: mistake.

III.   Appellant also complains of the admission of certain testimony.   In view, however, of what is said above, the admission ' thereof, if erroneous, was in no sense prejudicial.

As we find no error in the record, the judgment of the lower court is—*Affirmed.*

GAYNOR, C. J., WEAVER and PRESTON, JJ., concur.